569 So.2d 283 (1990)
STATE of Louisiana, Plaintiff-Appellee,
v.
Leo T. DESORMEAUX, III, Defendant-Appellant.
No. 21831-KA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1990.
*284 Newell & Newell by David M. Newell, Homer, for defendant-appellant.
John Blake, Dist. Atty., George H. Meadors, Asst. Dist. Atty., Homer, for plaintiff-appellee.
Before LINDSAY and HIGHTOWER, JJ., and LOWE, J. Pro Tem.
LINDSAY, Judge.
The defendant, Leo T. Desormeaux, III, entered a plea of guilty to the offense of possession of cocaine, in violation of LSA-R.S. 40:967(C), with a reservation of his right to appeal the trial court's denial of his motion to suppress. For the following reasons, we affirm the trial court judgment.

FACTS
At about 2:30 a.m. on December 5, 1988, Deputy Sheriff George D. Shirey of the Claiborne Parish Sheriff's Office was patrolling Highway 79 in an unmarked police unit.[1] Deputy Shirey was in full uniform. He was travelling south from Homer towards Minden, Louisiana. Deputy Shirey observed a 1985 Dodge pickup truck parked on the shoulder of the highway with its lights on. As the weather was cold, the deputy could see exhaust being emitted from the car, demonstrating that the engine was running. The interior light of the vehicle was on, illuminating a figure in the front seat leaning to the right.
*285 Unable to determine whether the occupant of the car was conscious or not, Deputy Shirey decided to stop to offer assistance. He pulled in behind the truck with his emergency lights on. Before the deputy exited from his car, the defendant got out of the truck and began to walk towards the patrol car. Deputy Shirey described the defendant as "walking extremely fast." Also, the defendant acted "hyped up, more or less nervous."
The deputy instructed the defendant to stop where he was. The defendant complied and walked back to the left corner of the truck. The men conversed briefly. The deputy asked to see the defendant's driver's license, which the defendant produced. The deputy then asked to see his vehicle registration and proof of automobile insurance. The defendant, who still seemed extremely nervous, stated that he would have to get these documents from the truck.
As a safety precaution, Deputy Shirey asked if there were any weapons in the vehicle. The defendant replied that there was a loaded .38 pistol on the seat. The deputy asked if he could remove the weapon, but the defendant insisted upon doing it himself. In so doing, the defendant leaned in the truck in a way that suggested to the deputy that he was attempting to block the deputy's view of the vehicle interior. Apprehensive for his own safety, Deputy Shirey ordered the defendant to step away from the truck. However, the defendant ignored him. Instead, the defendant reached over to a denim jacket which was lying on the seat, folding it over halfway "as [if] to cover something up," and slowly reached under the jacket. He picked up the holstered pistol and handed it to the deputy.
Deputy Shirey asked the defendant why he was so nervous. The defendant replied that he had recently purchased the pistol and was afraid it was stolen. The deputy volunteered to run a check on the weapon. The defendant agreed to this procedure, remarking that he was curious and wanted to know whether the weapon was "hot". The report received by the deputy did not indicate that the gun was stolen.
The deputy again asked the defendant why he was still so extremely nervous and "fidgety." The defendant said he was nervous because he had been looking at a pornographic magazine and was embarrassed for the deputy to know this. He also said the magazine was on the truck seat. However, the deputy did not observe any magazine and became suspicious that the defendant was manufacturing answers to his questions.
At some point the men moved to the passenger side of the truck so that the defendant could continue to search for his insurance papers.[2] The defendant was unable to locate any insurance documents. The deputy, apprehensive for his safety because the defendant had already produced one loaded weapon and was then rummaging through papers while blocking the deputy's view, asked the defendant if he would mind removing the denim jacket on the seat and unfolding it. The defendant replied that he did not mind. He picked up the jacket and the pile of papers upon which it was resting, and placed the items on the ground beside the truck. As he did so, some of the items in the pile shifted and slid. The jacket fell partially open, revealing a plastic baggie containing a white powdery substance resembling cocaine.[3]
Deputy Shirey asked the defendant what was in the baggie. At that point, the defendant pled with the officer not to arrest him as it was only a small amount. The deputy then arrested the defendant for possession of cocaine. Deputy Shirey summoned a wrecker to tow the truck. He put back in the truck the items which the defendant had placed on the ground. These items included a rearview mirror and razor blades, which had suspected cocaine residue and had been wrapped up in the jacket.
*286 The defendant was transported to the sheriff's office where he signed a consent-to-search form at 3:55 a.m. A subsequent search of the vehicle resulted in the seizure of two devices for smoking marijuana and three partially smoked marijuana cigarettes.
A bill of information was filed on December 22, 1988, charging the defendant with possession of cocaine, in violation of LSA-R.S. 40:967(C). On March 16, 1989, the defendant filed a motion to suppress evidence, claiming the officer lacked probable cause to search the vehicle. A hearing was held on September 15, 1989, at which only Deputy Shirey testified. The trial court denied the motion, finding that the deputy had sufficient probable cause to detain the defendant until proper proof of insurance was produced. Additionally, the trial court found that there was no search because the cocaine fell out when the defendant voluntarily removed his jacket from the truck.
On September 15, 1989, the defendant entered a plea of guilty to the charge of possession of cocaine, reserving the right to appeal the trial court's denial of the motion to suppress. State v. Crosby, 338 So.2d 584 (La.1976). On November 16, 1989, in accordance with an agreement between the parties, the trial court imposed a suspended sentence of three years at hard labor, and assessed a $1,000 fine, plus costs. The defendant was placed on unsupervised probation for three years. The court further ordered the defendant to pay $2,000 to the Claiborne Parish Probation Office.
The defendant appeals from the trial court's denial of his motion to suppress. He contends that the trial court erred in refusing to suppress the evidence obtained as a result of his allegedly illegal detention by the deputy sheriff.

MOTION TO SUPPRESS
The defendant argues that the trial court erred in denying the motion to suppress. He contends that the deputy had no reasonable suspicion to believe that the defendant had committed a crime and thus had no basis for detaining him.
LSA-C.Cr.P. Art. 215.1 provides that a law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense. The officer may demand the person's name, address, and an explanation of his actions. Reasonable cause for such a detention is something less than probable cause and is assessed according to the totality of the facts and circumstances known to the police officer, from which in retrospect, it can be determined whether an infringement on the individual's right to be free from governmental interference was constitutionally permissible. State v. Thompson, 543 So.2d 1077 (La.App. 2d Cir.1989), writ denied 551 So.2d 1335 (La.1989). However, articulable suspicion is necessary only where the stop is forcible. State v. Neyrey, 383 So.2d 1222 (La.1979).
Police officers do not need probable cause to arrest or reasonable cause to detain each time they attempt to converse with a citizen. The mere fact that the police approach a citizen and address him does not compel that citizen to respond to the inquiries or comply with their requests; legally, nothing prevents his chosing not to answer and walking away. State v. Shy, 373 So.2d 145 (La.1979); State v. Neyrey, supra.
The court stated in Neyrey, 383 So.2d at 1224:
Policemen in the course of their duties initiate or respond to a wide variety of encounters, many of which are not related to the pursuit of criminalsproviding first aid, mediating disputes or just talking to citizens. Policemen may defuse arguments. They may act as good Samaritans in checking to see if someone is in trouble, sick, too drunk to care for themselves and in need of assistance.
Policemen could not perform such valuable non-prosecutorial services nor could they effectively pursue criminals if they did not initiate or respond to encounters with citizens. While unsolicited assistance, unasked for conversation, and unrequested advice are not always welcome, *287 the Constitution provides no protection from these everyday annoyances whether the source of irritation is a policeman or a citizen. [footnote omitted] The citizen's remedy in either instance is the same, decline the assistance, refuse to converse, or walk away. State v. Shy, supra.

Deputy Shirey testified that he stopped to offer assistance to the defendant. He observed the defendant's vehicle pulled over on the shoulder of the road, engine running, in the middle of a cold night. A figure was leaning or slumping toward the middle of the seat. Upon stopping, the officer was immediately presented with an extremely nervous, "hyper" driver. Officer Shirey testified that he did not know if the defendant's emotional state was a result of medication or a reflection of his personality type. The officer requested identification as he was entitled to do under the circumstances.[4]
There is no indication in the record that the encounter between the defendant and the officer involved any element of force or duress, or a temporary restraint of the defendant's freedom to walk away sufficient to be deemed a "stop." State v. Salazar, 389 So.2d 1295 (La.1980).
The defendant obviously did not feel that he was constrained by the officer's presence. He felt sufficiently free in his personal liberty to deny the officer's request that the officer be allowed to remove the loaded weapon from the truck. Also, he completely ignored the officer's one order to himto stand away from the truck when he tried to block the officer's view of the interior of the truck while he retrieved the gun. We note that the deputy took no action against the defendant for his failure to comply. To the contrary, the officer then offeredin fact, asked the defendant's permissionto run a check on the weapon for the defendant who expressed concern as to whether the newly-purchased gun was stolen. Later, when the officer asked if the defendant would mind removing the denim jacket from the truck and unfolding it, the defendant agreed. However, he ignored the request to unfold the jacket. Instead, he felt sufficiently free to take the jacket and the other items surrounding it and place them on the ground in a pile. (The officer testified that he also suggested the removal of the stack of papers.) At this point, the jacket fell open when the items in the stack shifted.
It was the defendant's voluntary action in placing the jacket on the ground that led to the inadvertent discovery of the cocaine. The cocaine was not revealed by virtue of any order given by the officer. The contraband was then placed in plain view of the officer, and he was entitled to notice it.
Officer Shirey's conduct during the exchange with the defendant before the discovery of the cocaine was clearly not overbearing. He readily accepted the defendant's refusal to let him retrieve the loaded gun and the defendant's refusal to move away from the car. The officer's stated purpose in requesting removal of the jacket was to eliminate the defendant's rummaging through unknown items. Based upon the deputy's general acquiescence to the defendant's conduct, this record strongly indicates that the officer would have likewise accepted the defendant's action in placing the folded jacket on the ground as a satisfactory means of removing it from the defendant's immediate reach.
Also, based upon the record before us, we cannot find that the encounter between the officer and the defendant prior to the discovery of the cocaine was unduly lengthy. The record indicates that the officer initially observed the defendant's vehicle at about 2:30 a.m. Thereafter, the officer conversed with the defendant, checked on the weapon and checked the registration on the vehicle. After the discovery of the cocaine and the arrest, the *288 defendant was taken to the sheriff's office. Also, the vehicle was apparently towed to the sheriff's office. The consent-to-search form was signed at 3:55 a.m. at the sheriff's office. Therefore, all these activities, including travel time to the sheriff's office, took less than an hour and a half. At some point during this time, well before the signing of the consent-to-search form, the officer established probable cause to arrest the defendant.
We conclude that there was no forcible stop of the defendant by the deputy sheriff. The discovery of the cocaine was inadvertent. The officer did not act unreasonably under the circumstances revealed in this record.
This assignment of error has no merit.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Although unmarked, the patrol car was equipped with emergency red lights and a siren.
[2] The deputy had run a check on the vehicle registration which apparently had revealed no irregularities.
[3] Subsequent analysis determined that the substance in the baggie was cocaine. At the motion to suppress, the defendant stipulated this fact.
[4] The officer had authority to request the driver's license [LSA-R.S. 32:411(D) and 32:404]; and vehicle registration certificate [see LSA-R.S. 47:506, 47:511, 47:512, 47:513 and 47:540]. However, the record indicates that the defendant was a non-resident whose vehicle was registered in Texas and thus exempted from Louisiana's Compulsory Motor Vehicle Liability Security Law [LSA-R.S. 32:863.1].