607 So.2d 857 (1992)
STATE of Louisiana, Appellee,
v.
Danny PONDER, Appellant.
No. 24292-KA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
*858 Joey Hendrix, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Walter E. May, Dist. Atty., Douglas L. Stokes, Jr., Asst. Dist. Atty., Jonesboro, for appellee.
Before NORRIS, VICTORY and BROWN, JJ.
BROWN, Judge.
Defendant, Danny Ponder, brings this appeal seeking reversal of his conviction because of the trial court's denial of a motion to suppress statements and physical evidence. Defendant alleges that the statements and evidence were the fruits of an illegal seizure and custodial interrogation. Finding these claims lack merit, we affirm.

FACTS
Defendant, Danny Ponder, was charged by bill of information with three counts of illegal possession of stolen things in violation of LSA-R.S. 14:69. Ponder pled guilty to count one concerning three firearms of a value between $100 and $500 and to count three involving a Ford Mustang automobile of a value greater than $500. Count two pertaining to a Zenith VCR was dismissed. Ponder, however, reserved his right pursuant to State v. Crosby, 338 So.2d 584 (La. 1976), to appeal the trial court's ruling denying his motion to suppress. Ponder was then sentenced to serve two concurrent sentences of one and five years at hard labor. These sentences were suspended and defendant placed on probation. In addition, on count three, Ponder was ordered to pay a fine of $2,500.
While investigating a burglary involving stolen guns, Deputy Andy Brown of the Jackson Parish Sheriff's Office received a telephone call from Officer Wayne Buchans of the Hodge Police Department. An informant had told Officer Buchans that while in Ponder's home he overheard a discussion between Ponder and Bobby Roden about guns taken in a burglary. Deputy Brown had interviewed Roden and considered him a primary suspect in the burglary. The following morning, on December 5, 1990, Deputies Andy Brown and Scott Brown went to Ponder's home. The deputies did not believe they had probable cause to secure a search warrant but wanted to speak with Ponder and possibly obtain his consent to search. As the deputies approached Ponder's trailer they heard someone inside, but when they knocked on the door no one answered. The deputies left and set up surveillance in their car about two hundred yards north of Ponder's driveway.
Thirty minutes later, Ponder and a friend, Jimmy McConathy, left in Ponder's car heading south. The deputies immediately began to follow but made no effort to stop Ponder. About two hundred yards from his own driveway, Ponder pulled off the road and stopped. Both Ponder and McConathy testified that they pulled over *859 because of car trouble and that Ponder got out to look under the hood. The deputies pulled in behind Ponder's vehicle and Ponder walked over to their car. Ponder had a gun in a hip holster, which the deputies removed for their own safety.
Deputy Andy Brown walked to the passenger side of the vehicle and saw that McConathy had a rifle in his lap. The deputy took the rifle and a computer check showed it to be stolen. At this point McConathy was arrested and both Ponder and McConathy were advised of their Miranda rights. Ponder gave verbal consent to search his automobile which resulted in no seizures. The deputies then asked Ponder some questions, including whether they could search his home. Ponder agreed and signed a consent to search form. Ponder was never under arrest and drove himself to his home where a search was conducted. The search of Ponder's home did not result in any seizures but the deputies did write down the serial numbers from some VCRs and observe a telescope.
After completing this initial search, Ponder was asked to come to the sheriff's office for questioning. At the office, the deputies again informed Ponder of his Miranda rights and had him sign a written waiver. Ponder was told that a VCR like the one he had in his trailer had been reported stolen. Ponder denied any criminal culpability and volunteered to give the VCR to the deputies. After leaving the sheriff's office, Ponder went back to his trailer and got the VCR. Ponder then saw Deputy Andy Brown on the street, flagged him down and gave him the VCR.
After determining that the VCR was stolen in a burglary, Deputy Brown obtained a warrant for Ponder's arrest (count two). On December 10, 1990, after having been arrested and jailed, Ponder once again was advised of his Miranda rights and signed a written waiver. Ponder voluntarily took the deputies back to his home to recover a telescope that was also taken in the burglary. This was the telescope the deputies had observed in the initial search on December 5, 1990. While at Ponder's trailer, Deputy Brown walked to a storage shed in the back yard. The shed was padlocked. Ponder, without being asked, pried the door open with a board. Inside the shed was a stolen Ford Mustang (count three). Ponder admitted that he knew the Mustang was "hot."
On December 11, 1990, Deputy Brown again spoke with Ponder in jail. Ponder was again read his Miranda rights and agreed to give a statement. Ponder admitted that he had hidden two pistols in the woods behind his trailer and voluntarily took the deputies to the location where they recovered the guns (count one).
A motion to suppress hearing was conducted on May 7, 1991, based on defendant's assertions that the officers' initial contact with him was illegal, that it resulted from a pretextual investigatory stop and that his statements were obtained in violation of his constitutional rights. The trial court denied defendant's motion to suppress. Ponder then entered a plea of guilty to counts one and three (count two was dismissed). Pursuant to his Crosby plea, Ponder now appeals the issues raised and denied in his motion to suppress hearing.

DISCUSSION
Ponder claims that all evidence seized and subsequent statements made were fruits of his initial "stop" and should be suppressed because that stop was illegal.
Unreasonable searches and seizures are prohibited by the Fourth Amendment and by Article 1, Section 5 of the 1974 Louisiana Constitution. Violations are enforced by exclusionary rules. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); State v. Davis, 375 So.2d 69 (La. 1979).
The primary question presented in this argument is whether Ponder's stop amounted to a seizure. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." Florida v. Bostick, ___ U.S. ___, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). So long as a reasonable person would feel free to disregard the police and *860 go about his business, the encounter is consensual and no reasonable suspicion is required. Florida v. Bostick, supra. According to both Ponder and his passenger, the reason he pulled off the highway was car trouble. The sheriff deputies did not signal with sirens or flashing lights for Ponder to stop. The deputies pulled in behind Ponder's parked vehicle. At this point no stop or seizure had occurred and Ponder was in the posture of a pedestrian for purposes of the Fourth Amendment.
Police officers do not need probable cause or reasonable suspicion each time they attempt to converse with a citizen. The mere fact that the police approach a citizen and address him does not compel that citizen to respond to inquiries or comply with their requests; legally, nothing prevents his choosing not to answer and walking away. State v. Neyrey, 383 So.2d 1222 (La.1979); State v. Desormeaux, 569 So.2d 283 (La.App. 2d Cir.1990). Citing Neyrey, this court in Desormeaux, 569 So.2d at 286, stated:
Policemen in the course of their duties initiate or respond to a wide variety of encounters, many of which are not related to the pursuit of criminalsproviding first aid, mediating disputes or just talking to citizens. Policemen may defuse arguments. They may act as good Samaritans in checking to see if someone is in trouble, sick, too drunk to care for themselves and in need of assistance.
Policemen could not perform such valuable nonprosecutorial services nor could they effectively pursue criminals if they did not initiate or respond to encounters with citizens. While unsolicited assistance, unasked for conversation and unrequested advice are not always welcome, the Constitution provides no protection from these everyday annoyances whether the source of irritation is a policeman or a citizen. [footnote omitted] The citizen's remedy in either instance is the same, decline the assistance, refuse to converse, or walk away. State v. Shy, 373 So.2d 145 (La.1979).
By Ponder's own testimony, he admits that he pulled off the road because he was having car trouble. The deputies did not signal for Ponder to pull over by turning on their lights or sirens. Ponder argues that he was forcibly restrained because he thought the police would pull him over anyway had he not done so on his own. Ponder's subjective belief as to what may have happened is irrelevant.
Once Ponder stopped his car, the deputies were free to stop behind him and offer assistance or ask him questions. Ponder was under no obligation to remain at the scene, nor was he under any obligation to answer questions. As Deputy Andy Brown testified, Ponder was free to leave at any point up to the discovery that the rifle in McConathy's possession was stolen. At this time Ponder was read his Miranda rights and he verbally consented to a search of his vehicle and signed a written consent to search his home.
We note that under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and LSA-C.Cr.P. Art. 215.1, the deputies were correct in neutralizing the threat of physical harm presented by the guns being carried by Ponder and McConathy. The totality of the circumstances met the Terry v. Ohio standard. The deputies did not need probable cause for an investigative stop and frisk but only an articulable suspicion. Considering the information received from officer Buchans, Ponder's reaction to the visit at his home, and the observation of weapons, the deputies possessed sufficient facts to justify temporarily disarming Ponder and McConathy. State v. Lightfoot, 580 So.2d 702 (La.App. 4th Cir.1991).
Whether Ponder freely consented to the searches and voluntarily made statements is an issue of fact and subject to a clearly erroneous standard of review. The credibility of witnesses is a matter which addresses itself to the trier of fact. State v. Bell, 315 So.2d 31 (La.1975). These determinations are subject to a clearly wrong/manifest error standard of review. State v. Sanders, 542 So.2d 1134 (La.App. 3d Cir.1989).
*861 On the morning of December 5, 1990, while standing by his car, Ponder was read his Miranda rights and agreed to talk with the deputies. Ponder consented to a search of his vehicle. Ponder gave written permission to search his home (exhibit S-1). Later at the sheriff's office Ponder signed a waiver of his Miranda rights (exhibit S-2). After leaving the sheriff's office, Ponder flagged down the deputy on the highway and gave him the VCR in question.
On December 10, 1990, at the jail, Ponder was read and signed a Miranda waiver (exhibit S-3). Ponder consented to take the deputies back to his home to recover a telescope. While at his trailer, Ponder pried open the door to a shed in his back yard where the stolen Mustang was found. On December 11, 1990, Ponder was again advised of and waived his Miranda rights at the jail. After making a statement, Ponder took Deputy Brown to the woods behind his trailer where two guns taken in a burglary were found.
Ponder, however, testified that on December 5, 1990, he was made to put his hands on the car and not allowed to move until he signed the consent to search form. He denied being given any Miranda rights. He claims the deputies threatened to tear up his trailer if he didn't permit the search. On December 10 and 11, 1990, Ponder claims he continuously asked for a lawyer and only made statements after he was refused contact with an attorney. In rebuttal Deputy Brown specifically contradicted Ponder's testimony.
Based on the record, the judge was not manifestly erroneous in accepting Deputy Brown's testimony, and rejecting Ponder's statements as untrue.

CONCLUSION
For the foregoing reasons, defendant's conviction and sentence are affirmed.