821 So.2d 79 (2002)
STATE of Louisiana
v.
Gerard HILL.
No. 01-KA-1372.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 2002.
*81 Paul D. Connick, Jr., District Attorney, Churita H. Hansell, Terry M. Boudreaux, Thomas Block, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Frank Sloan, Covington, LA, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and SUSAN M. CHEHARDY.
DALEY, Judge.
Defendant Gerard Hill appeals his conviction of possession of cocaine, a violation of LSA-R.S. 40:967(C). Defendant pled guilty under State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the trial court's denial of his Motion to Suppress Evidence. After review, we hold that the Motion to Suppress was properly denied. Accordingly, we affirm the conviction.

FACTS:
At the suppression hearing, the State offered the testimony of Deputy Kurt Zeagler of the Jefferson Parish Sheriffs Office. Deputy Zeagler testified that, on the night of July 10, 2001, he was patrolling in a marked police vehicle in the area of Dreyfous Street and South I-10 Service Road. He had made numerous drug arrests in that neighborhood, some of them in response to citizen complaints. The officer was also aware of an ongoing rash of car thefts in the area.
At 8:45 p.m., Deputy Zeagler turned onto Giuffrias Street. He noticed a car parked on the side of the street. The car's engine was not running. Defendant, Gerard Hill, was sitting in the driver's seat. *82 David Duhe was in the passenger seat. The officer approached the car from the rear, and looked at defendant and his companion as he drove slowly past. Neither man looked at the officer. Deputy Zeagler testified that his suspicions were aroused when he noted that both men stared straight ahead as he passed. They were unusually still, as if they were trying to avoid notice.
Deputy Zeagler continued to drive for a short distance, and then he turned around and drove back toward defendant's car. The officer did not have on his overhead lights or siren. He drove past the car again, and again defendant and Duhe did not make eye contact with him. Deputy Zeagler testified that he believed the men might be planning to break into a car.
The deputy stopped his car just beyond defendant's car, and approached the driver's side door on foot. Deputy Zeagler said, "Hey man, what's going on. Do me a favor. Step out and come talk to me for a minute." Defendant complied. Defendant appeared "antsy," and evaded Deputy Zeagler's questions regarding his presence in the neighborhood. The officer left defendant standing at the rear of the car, and approached the passenger side. He asked Duhe to exit the car, and Duhe complied. Deputy Zeagler then saw, on the front seat where defendant had been sitting, a white box with two straws protruding from it, and a clear plastic bag containing white powder.
Deputy Zeagler then handcuffed Duhe and escorted him to where defendant was standing. The officer then handcuffed defendant. He advised both men of their Miranda[1] rights. Deputy Zeagler asked the men what the white powder was. They both denied any knowledge of white powder. The officer leaned into defendant's car to retrieve the powder, and saw the butt of a small pistol sticking out of the center console on the driver's side. He retrieved the gun, a loaded .22 caliber pistol. The officer asked the men who owned the gun, and defendant said it belonged to him.

ASSIGNMENT OF ERROR
Defendant argues that the trial court erred and/or abused its discretion in denying the Motion to Suppress. By this assignment, defendant argues that the seizure of the cocaine evidence was the result of an illegal stop, and therefore should have been suppressed. Defendant contends that Deputy Zeagler lacked reasonable suspicion of criminal activity to initially stop and talk to him, and that the evidence ultimately recovered from the car was the product of an unlawful stop and an unlawful seizure.
The Fourth Amendment to the United States Constitution and Article I, Section V of the Louisiana Constitution prohibit unreasonable searches and seizures.[2] We are called upon to determine if under the factual circumstances defendant's constitutional rights were violated when Deputy Zeagler approached his vehicle. Was the encounter between Mr. Hill and Deputy Zeagler a permissible conversation or an investigative stop?
Absent reasonable suspicion, an investigatory stop is illegal, and the evidence seized as a result is suppressible. The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by State *83 and Federal jurisprudence.[3] The Terry standard is codified in LSA-C.Cr.P. art. 215.1, which allows a police officer "to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense" and to demand that the person identify himself and explain his actions.
Reasonable suspicion for an investigatory stop is something less than probable cause, and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from government interference.[4] An unparticularized hunch is insufficient to establish reasonable grounds for an investigatory stop.[5]
The determination of reasonable grounds for an investigatory stop, or probable cause for arrest, does not rest on the officer's subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action.[6] In considering those circumstances, a reviewing court should give deference to the inferences and deductions of a trained police officer "that might well elude an untrained person."[7] An officer's experience, his knowledge of recent criminal patterns and his knowledge of an area's frequent incidence of crimes, are factors that may support reasonable suspicion for an investigatory stop.[8]
Defendant argues that Deputy Zeagler testified he did not see defendant doing anything suspicious as he approached. He argues that the officer did not have any specific information that defendant was engaged in criminal activity. Defendant and Duhe did not make any movements that suggested they were engaged in a drug transaction or that they were attempting to conceal something. Deputy Zeagler testified, though, that the defendants looked straight ahead and refused to make any eye contact with him or acknowledge his presence at all on two different occasions when he passed them, behavior that he thought was strange and out of keeping with his experience of how people normally behave when a marked police car approaches. He thought they were sitting still in an extremely artificial manner, as if they were trying not to be noticed. He felt their behavior was odd enough that he purposely drove by them a second time.
This court has found that presence in a high crime area, coupled with nervousness, startled behavior, flight, or suspicious actions upon the approach of officers, is sufficient to justify an investigatory stop. State v. Duckett, 99-314 at p. 7, 740 So.2d at 230. Defendant did not attempt to flee, but the officer testified that, in his experience, defendant's very lack of behavior was suspicious.
*84 Justification for a seizure, or "stop," must be objectively reasonable under the concrete factual circumstances of individual cases in order for it to be legal. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988. Stopping an individual based on a hunch or generalized suspicion is impermissible, as a police officer is required to have a particularized suspicion based on articulable facts. State v. Chark, 96-1667 (La.App. 3 Cir. 4/30/97), 693 So.2d 316.
In State v. Benjamin, when the defendant saw the police officers, he "clutched at his waistband" and began to run away. This flight, coupled with the defendant's holding his waistband as if to support a weapon or contraband, was found sufficient to raise a reasonable suspicion that the defendant was either engaging in or about to engage in criminal activity, thus justifying the stop. In the instant case, neither the defendant nor Duhe sought to flee the encounter with Deputy Zeagler.
In State v. Chark, police officers observed the defendant on a street corner at 11:30 p.m., leaning against a tree. They testified that when defendant saw them, he walked away from the tree and approached his bicycle. The officer approached Chark and questioned him. The officer saw that Chark's fist was clenched. The officer requested the defendant reveal what he was holding in his hand. Asking the defendant to reveal what was in his hand supported a determination that the defendant had been stopped within the meaning of the Fourth Amendment. The court found that the officer did not see the clenched fist until after the defendant had been detained. The Third Circuit found that, at most, the officer had an unparticularized, general hunch regarding the defendant's possible involvement in criminal activity, which did not support the investigatory stop.
Looking at the objective facts of this encounter, we find that Deputy Zeagler lacked reasonable suspicion based upon articulable facts that the defendants were engaging in, or were about to engage in, criminal conduct. We cannot say that the defendant's actions, sitting in a car doing nothing, not making eye contact with the police, constitutes "suspicious behavior" sufficient to justify an investigatory stop. Deputy Zeagler's testimony that he found their lack of specific behavior "suspicious," in his experience, is nothing more than an attempt to describe their behavior within the necessary jurisprudential "formula" to show reasonable suspicion to make the stop. Despite an officer's testimony that certain behavior is "suspicious" of criminal activity in his experience, the courts are required to examine the officer's claim of suspicious conduct and evaluate the objective facts of that behavior. We are hesitant to allow passive behavior (the defendant's failure to look at the police officer as he passed in his patrol car) to be classified as conduct that creates reasonable suspicion of criminal conduct. Defendant's presence in a high crime area alone, without more, is not enough to provide the police with reasonable suspicion based upon articulable facts sufficient to make an investigatory stop. Under the objective facts of this case, Deputy Zeagler was not justified in making an investigatory stop.
While police officers are required to have reasonable suspicion before making a stop, Deputy Zeagler did not need reasonable suspicion to talk to defendant. Law enforcement officers enjoy the same liberty possessed by every citizen to address questions to other persons.[9] In *85 State v. Ponder, 607 So.2d at 859-860, the Louisiana Supreme Court commented:
"[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required. Florida v. Bostick, supra.

. . . .
Police officers do not need probable cause or reasonable suspicion each time they attempt to converse with a citizen. The mere fact that the police approach a citizen and address him does not compel the citizen to respond to inquiries or comply with their requests; legally nothing prevents his choosing not to answer and walking away. State v. Neyrey, 383 So.2d 1222 (La.1979); State v. Desormeaux, 569 So.2d 283 (La.App. 2 Cir.1990).
See also, State v. Fisher, 97-1133, pp. 4-5 (La.9/9/98), 720 So.2d 1179, 1183 ("[M]ere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention."). This Court has held that "a law enforcement officer is free to approach any citizen and engage him in conversation even without reasonable grounds to believe that criminal activity has occurred so long as the person is free to disregard the questioning and walk away." [10]
A person is "seized" within the meaning of the Fourth Amendment only when that person either submits to the police show of authority or is physically contacted by the police. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). A person is seized within the meaning of Article 1, Section 5 of the Louisiana Constitution when that person is either "actually stopped" or when an "actual stop" of the person is "imminent." State v. Tucker, 626 So.2d 707 (La.1993); State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276. A person has not been "actually stopped" unless he submits to a police show of authority or is physically contacted by the police. An "actual stop" of the person is "imminent" only when the police come upon a person with such force that, regardless of the person's attempt to flee or elude the encounter, an actual stop of the person is virtually certain. Id.
According to Deputy Zeagler's testimony, defendant exited his vehicle by consent, not by force. There is no evidence that there was a "seizure" within the meaning of the Fourth Amendment or the Louisiana Constitution. The officer simply questioned defendant about what he was doing in the area. Although defendant did not respond to his questions, Deputy Zeagler did not restrain him. Deputy Zeagler then asked the passenger, Mr. Duhe, to exit the car. Duhe also complied. Deputy Zeagler did not pull the defendant's vehicle over. Deputy Zeagler did not have on his car's overhead police lights or siren. He did not have his weapon drawn. Moreover, there is nothing in the record to indicate that Deputy Zeagler touched or conducted a pat-down search of defendant prior to the discovery of the contraband or that he did or said anything to restrict defendant's freedom or restrict his movements.
In State v. Thomas, 98-1024 (La.App. 5 Cir. 3/10/99), 734 So.2d 39, two police officers were patrolling a housing project known to them as a high crime area where *86 drug sales were common. The officers noticed the defendant standing on a street corner. They recognized him as someone they had frequently "interviewed" and "arrested" in the past. The officers stopped their car near the defendant, and approached him. They asked the defendant his name, and then ran it through the police computer. They learned there was an outstanding attachment for defendant in another parish. They placed him under arrest, and conducted a pat-down search incident to arrest. They found no contraband, but arrested him on the outstanding warrant. Later while being booked at the police station contraband was found on defendant. Defendant sought to suppress the contraband.
This Court found that when the officers initially approached the defendant, there was no "seizure" within the meaning of the Fourth Amendment. This Court reasoned that one of the officers testified he did not have any particular reason to suspect the defendant was committing a crime, but that his purpose in approaching the defendant was to conduct a field interview to "see what the defendant was doing in the area." State v. Thomas, 98-1024 at p. 5, 734 So.2d at 42. According to the officer's uncontradicted testimony, no weapons had been drawn, the police unit's lights had not been activated, and the defendant gave the officers his name and date of birth upon request. The officers did not pat down the defendant until they learned of the attachment. This Court stated, "Nothing at the hearing on the motion to suppress indicated that the officers coerced the defendant or that he was not free to leave or walk away. We find that this encounter took place with the defendant's consent in a public place." Id. See also, State v. Duplessis, 391 So.2d 1116 (La.1980). We find that the interaction between Deputy Zeagler and defendant was of the same nature as the contact between the officers and the defendant in Thomas.
Because Deputy Zeagler's initial contact with defendant was legal and the defendant was not seized or detained until drugs were discovered in plain view, the seizure of the evidence was valid under the "plain view" exception to the warrant requirement. Under the "plain view" doctrine, police officers may seize evidence without a warrant if they are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if they have a lawful right of access to the object.[11] In the instant case, Deputy Zeagler was lawfully in a position to view the bag of white powder. He testified that he had made numerous drug arrests in the area, and it may therefore be inferred that he suspected the white powder to be cocaine.
In this case Deputy Zeagler did not have sufficient reasonable suspicion to detain or frisk Mr. Hill prior to finding the drugs. Had Deputy Zeagler used force, implied or actual, had he ordered the defendant to exit the vehicle, or restricted his freedom, then the defendant's argument would have merit. Asking defendant in a non-authoritive manner to voluntarily step out of a parked car and answer some questions does not rise to the level of a investigatory stop. Since the initial encounter with Deputy Zeagler was not an investigatory stop, we find no error in the trial court's denial of the Motion to Suppress. Accordingly, the defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] State v. Ponder, 607 So.2d 857, 859 (La.App. 2 Cir. 10/28/92); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
[3] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, supra; State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
[4] State v. Duckett, 99-314, p. 5 (La.App. 5 Cir. 7/27/99), 740 So.2d 227, 230.
[5] State v. Camese, 00-1479, p. 5 (La.App. 5 Cir. 4/11/01), 786 So.2d 763, 766.
[6] State v. Kalie, 96-2650, pp. 1-2 (La.9/19/97), 699 So.2d 879, 880, per curiam.
[7] State v. Huntley, 97-0965, p. 2 (La.3/13/98), 708 So.2d 1048, 1049 (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).
[8] State v. Flagg, 01-65 (La.App. 5 Cir. 7/30/01), 792 So.2d 133; State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98.
[9] United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.ld 497 (1980).
[10] State v. Watson, 99-1148, p. 11 (La.App. 5 Cir. 8/23/00), 774 So.2d 232, 239, writ denied, 00-2968 (La.9/28/01), 798 So.2d 106.
[11] Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); State v. Manson, 01-159, pp. 8-9 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 757.