# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 09-62

**STATE OF LOUISIANA**

**VERSUS**

**DAVY C. HARRIS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C14069
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Shannon J. Gremillion, Judges.

Amy, J., dissents and would affirm the ruling of the trial court.

**REVERSED.**

Van Hardin Kyzar
**District Attorney, 10th JDC**
**Billy J. Harrington, Assistant District Attorney**
**P. O. Box 838**
**Natchitoches, LA 71458**
**(318) 357-2214**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Mark Owen Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**(318) 572-5693**
**Counsel for Defendant/Appellant:**
**Davy C. Harris**

**GREMILLION, Judge.**

The Defendant, Davy C. Harris, was charged by bill of information with possession of cocaine, a violation of La.R.S. 40:967, after police found cocaine in his wallet. He was arraigned and entered a plea of not guilty. He filed a Motion to Suppress which was denied following a hearing.

Defendant entered a guilty plea pursuant to *State v. Crosby*, 338 So.2d 584 (La.1976), to possession of cocaine and reserved his right to seek review of the denial of his Motion to Suppress. He was subsequently sentenced to serve three years at hard labor. The sentence was suspended and Defendant was placed on two years supervised probation. He was also ordered to pay a fine of $1,000 or serve six months in jail. He was further ordered to pay fines and fees totaling $2,000.

Defendant is now before this court asserting one assignment of error. He contends the trial court erred in denying his Motion to Suppress. We agree.

> The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Similarly, the Louisiana Constitution provides that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." LA. CONST. art. 1, § 5. As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. Warrantless searches and seizures are considered to be per se unreasonable unless they can be justified by one of the Fourth Amendment's warrant exceptions. *See*, *e.g.*, *State v. Freeman*, 97-1115 (La.App. 5 Cir. 12/29/98), 727 So.2d 630, 634. The state has the burden of showing that one of the exceptions applies. *See*, *e.g.*, *State v. McHugh*, 92-1852 (La.1/6/94), 630 So.2d 1259, 1262. We review a trial court[']s ruling on a motion to suppress under the manifest error standard. *State v. Williams*, 08-272, p. 3 (La.App. 5 Cir. 12/16/08), 3 So.3d 526; *State v. Higgins*, 03-1980, p. 20-21 (La.4/1/05), 898 So.2d 1219, 1233, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).

*State v. Holmes*, 08-719 p. 2 (La.App. 5 Cir. 3/10/09), 10 So.3d 274, 278.

1

Deputy Roger Henson testified he received information from Lieutenant Brad Walker "in which he stated that he had received information of narcotics activity occurring at the boarding house on Berry Avenue . . . ." Deputy Henson was unaware of the source of the information relayed to him by Lieutenant Walker. Several deputies with the narcotics task force went to that location, later established as a "high drug area" by witness testimony. Deputy Henson testified that as the officers pulled up to the boarding house, there were ten to fifteen people in front of the building and Defendant, among others, ran inside the boarding house. Deputy Henson stated that he and two other officers followed Defendant into the boarding house.

Deputy Henson further testified that Defendant ran into his bedroom. An officer knocked on the bedroom door. However, Defendant would not respond. After several "attempts" to get Defendant out of the room, he finally opened the door. Deputy Henson testified that he then "escorted" Defendant out of the boarding house into an area where several others had been "detained." During that time, Defendant was not handcuffed and was observed trying to give his wallet to someone else several times. Deputy Henson described the subsequent sequence of events as follows:

> At that time I grabbed the wallet and asked him if there was anything in it. He said no. I asked him if he minded me looking inside the wallet. He said that's okay. So I opened the wallet up and observed one rock of crack/cocaine inside the wallet.

Deputy Henson further testified that there were suspected crack pipes and empty wrappers, which were indicative of crack cocaine and marijuana use, on the ground outside the boarding house when the officers arrived. Deputy Henson testified that he did not observe Defendant selling drugs or using drugs.

2

Corporal Jessie Taitano (one of the other officers on the scene) testified that he did not observe Defendant committing a crime. However, he observed Defendant attempt to give his wallet to someone else, but he was not close enough to hear what was said during that time.

**ANALYSIS**

The procession of the officers' conduct began with a tip. However, the State did not present any evidence regarding the source of that tip to Lieutenant Walker. Thus, one must presume the information was provided via an anonymous tip. *See State v. Young*, 99-2120 (La.App. 4 Cir. 9/6/00), 770 So.2d 7, 10, *writ denied*, 00-2798 (La. 9/21/01), 797 So.2d 63. *See also State v. Boson*, 99-1984 (La.App. 4 Cir. 1/17/01), 778 So.2d 687, *writ denied*, 01-430 (La. 9/13/02), 824 So.2d 1192.

An anonymous tip is actionable if it bears a "sufficient indicia of reliability" *Alabama v. White*, 496 U.S. 325, 328, 110 S.Ct. 2412, 2415 (1990). This boils down to two elements. The first is a "tendency to identify a determinate person." *Florida v. J.L.*, 529 U.S. 266, 272, 120 S.Ct. 1375, 1379 (2000). The second, and much more important element, is reliability regarding its "assertion of illegality." *Id.* Here, we have no evidence that the tip at issue provided any information that would tend to identify Defendant. Furthermore, although Deputy Henson testified there were suspected crack pipes and wrappers on the ground outside the boarding house that were indicative of marijuana and crack cocaine use, he did not testify that he saw Defendant using these items, in possession of these items, or that the items were even close to where Defendant had been upon the arrival of police. Without more, there was simply no reason to believe the tip was reliable as to its assertion of illegality.

Upon the officers' arrival, Defendant fled to his room in the boarding house.

3

"Flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop; however, this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion." *State v. Stanfield*, 05-839, p. 5 (La.App. 5 Cir. 3/14/06), 925 So.2d 710, 715.

It is the State's contention that Defendant's flight to his room was, indeed, highly suspicious when placed together with the tip, the drug paraphernalia, and the fact that they were in a "high drug area." In fact, in *State v. Hill*, 01-1372, p. 6 (La.App. 5 Cir. 5/15/02), 821 So.2d 79, 83, the fifth circuit stated, "This court has found that presence in a high crime area, coupled with nervousness, startled behavior, flight, or suspicious actions upon the approach of officers, is sufficient to justify an investigatory stop." *See also State v. Jones*, 02-1168 (La.App. 4 Cir. 1/29/03), 839 So.2d 377; *State v. Johnson*, 01-2081 (La. 4/26/02), 815 So.2d 809; *State v. Jackson*, 26,138 (La.App. 2 Cir. 8/17/94), 641 So.2d 1081; *State v. Williams*, 613 So.2d 259 (La.App. 1 Cir. 1992); *State v. Solomon*, 93-1199 (La.App. 3 Cir. 3/2/94), 634 So.2d 1330.

However, in *State v. Temple*, 02-1895 (La. 9/9/03), 854 So.2d 856, the supreme court noted that citizens are presumed law abiding, even those in high crime areas. Further, the case at bar is distinguishable from cases where courts have found the presence of a defendant in a high crime area coupled with flight provided a basis for police to conduct an investigatory stop. Defendant lived at the boarding house; thus, he was at his residence when police arrived and he ran into his own room.

Police followed Defendant into the boarding house. They made several attempts to get Defendant out of the room and he eventually opened the door. There

4

was no testimony regarding what was said to Defendant during that time, and consequently, no evidence which would allow us to conclude that he willingly left his room.

Additionally, Defendant was "escorted" out of the boarding house into an area where several others had been "detained." Witnesses did not describe what was meant by the phrase "escort" or if Defendant was free to leave during that time. Again, it is unclear if Defendant was free to leave at the time he was brought to the area where he, along with several others, were being detained.

Deputy Henson did testify that Defendant consented to the search of his wallet after he grabbed it. "[V]oluntary consent is an exception to the warrant requirement." *State v. Phillips*, 04-827, p. 9 (La.App. 3 Cir. 11/10/04), 887 So.2d 670, 677. "If consent to search is obtained after an illegal detention or entry, the consent is valid only if it was the product of free will and not the result of exploitation of the previous illegality." *State v. Veals*, 07-605, p. 17 (La.App. 5 Cir. 1/22/08), 977 So.2d 1030, 1039-40, *writ denied*, 08-571 (La. 11/26/08), 997 So.2d 543. "The burden is on the state to prove that the consent was given freely and voluntarily." *State v. Cooper*, 43,809, p. 9 (La.App. 2 Cir. 1/14/09), 2 So.3d 1172, 1179 (citation omitted).

In *State v. Owen*, 453 So.2d 1202, 1206 (La.1984) (citations omitted), the supreme court explained:

> [I]f the consent was obtained after an illegal detention or entry, the consent was valid only if it was the product of a free will and not the result of an exploitation of the previous illegality. Among the factors considered in determining whether the consent was sufficiently attenuated from the unlawful conduct to be a product of a free will are whether the police officers adequately informed the individual that he need not comply with the request, the temporal proximity of the illegality and the consent, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct.

5

Although we do not find flagrant misconduct by the police, the fact remains that we do not know enough about the initial tip to find it sufficiently reliable. We do not find Defendant's flight from is own front yard to his own room to be particularly suspicious even though the yard and his room exist within a high crime area and the yard contained possible drug paraphernalia. We cannot determine, based on the record, whether Defendant willingly opened the door to his room. We cannot know if Defendant consented to be escorted from his room or the temporal proximity of this escort to the ultimate consent to search. From Deputy Henson's testimony, it is clear that Defendant did not willingly give his wallet to the officer. There is also no testimony regarding whether Defendant was told he did not have to comply with the officer's request to search his wallet.

We agree with the trial court that Deputy Henson obtained consent to search the Defendant's wallet. However, considering the officers' conduct, and the many unknown facts surrounding this incident, we must conclude that the State failed to meet its burden to prove not only that Defendant gave his consent, but also that the consent was free and voluntary.

## JUDGMENT

The Defendant's conviction and sentence are set aside. The matter is remanded to the trial court for further proceedings consistent with this ruling.

**REVERSED.**

6