778 So.2d 687 (2001)
STATE of Louisiana,
v.
Dalshaun BOSON.
No. 99-KA-1984.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 2001.
Harry F. Connick, District Attorney, Cate L. Bartholomew, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Yvonne Chalker, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge KIRBY, Judge LOVE, and Judge GORBATY.
GORBATY, Judge.
On May 9, 1996, the defendant was charged by grand jury indictment, along with a co-defendant, Eric Smith[1], with possession of heroin with intent to distribute, La. R.S. 40:966, and possession of more than four hundred grams of cocaine, La. R.S. 40:967. The defendant was arraigned *688 and pled not guilty on May 14, 1996. He filed a motion to suppress evidence that was denied on June 24, 1996. A twelve-member jury found the defendant guilty on November 12, 1998. The defendant then filed a motion for new trial, which was denied on January 29, 1999. After he waived delays, the defendant was immediately sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on the heroin charge, and thirty years at hard labor on the cocaine charge. The sentences were ordered to run concurrently. The defendant filed a motion to reconsider sentence that was denied. Defendant subsequently filed this appeal.

FACTS
Officer Roger Smith testified that on March 4, 1996, he and Detective Hal Amos were instructed by Sergeant Bruce Little to conduct a narcotics investigation at the Friendly Inn, located at 4861 Chef Menteur Highway. Sergeant Little requested that they "check the area based on complaints of drug trafficking in that area. That hotel at 4861 Chef is [in] a high traffic area, prostitution and drug transactions." The officers were told to look for a white Ford LTD "that had been at that location" and two black males "that were supposed to be operating narcotics" from the hotel.
At approximately 10:40 a.m., Officer Smith and Detective Amos pulled their marked vehicle into the parking lot of the hotel, where they saw two male subjects getting into a late model white Ford LTD. The officers immediately approached the vehicle, ordered the men out of the car, and patted them down for weapons. No weapons were found.
The officers then advised the men that they had received complaints of drug trafficking in the area. Officer Smith testified that during the pat down search of Boson, he felt a bulge and saw some money in the defendant's pocket. Officer Smith stated he knew that drugs are sometimes stored in money. Based on this information, the officer ordered Boson to remove everything from his pockets. The defendant took out the roll of money and placed it on top of the police vehicle, where it began to blow away. As it was blowing away, Boson tried to discard a plastic bag containing crack cocaine. Officer Smith attempted to handcuff the defendant, and a struggle ensued. The defendant grabbed the money that the officers had placed on the hood of the car and escaped.
Detective Amos's testimony confirmed that of Officer Smith. He averred that they went to the hotel based on information concerning a white LTD and two black males. They immediately stopped the men when they saw the car, ordered them out of the car, and patted them down. Amos found a brown substance in co-defendant Smith's coat pocket. When Amos tried to handcuff him, co-defendant Smith punched him and fled. Amos chased him in his car and eventually caught him.

ERRORS PATENT
La. R.S. 40:967(F)(c) requires a person convicted of possession of more than four hundred grams of cocaine to pay a minimum fine of $250,000.00. The defendant was not fined in this case. However, an error patent favorable to the defendant will not be corrected where the error is not raised by the State or the defense. State v. Fraser, 484 So.2d 122 (La.1986).

ASSIGNMENT OF ERROR NUMBER ONE
The defendant argues the trial court erred in denying his motion to suppress. First, he argues that the officers lacked reasonable suspicion for the stop.
In State v. Curtis, 96-1408 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, the case relied on by the State, the police received information from a reliable confidential informant who stated that two black males were trafficking in heroin in a housing project. The informant specifically *689 described the clothing worn by both men, their physical appearances, and their approximate ages. The informant also said that one individual, later identified as the defendant, would hold the heroin and the other individual would hold the money. Based on this information, officers approached the location from different directions. As they approached the intersection, they saw two individuals who "exactly matched" the descriptions furnished by the informant. The two men began to walk away when the officers approached, but they were stopped by the officers and told to place their hands against the exterior wall of the building. One officer recognized the defendant as a person he had previously arrested for a heroin offense. As the suspects had their hands against the wall, the defendant attempted to reach toward the lower part of his right leg. One officer prevented the defendant from reaching his leg, then patted him down and felt a "bulge in the sock area of his right leg." The officer retrieved a cigarette pack that had been ripped open and saw a white paper, inside of which were tin foil packets. The packets contained a white powder, which the officers believed was heroin. The defendant was then arrested. The trial court granted the defendant's motion to suppress the evidence, finding that the officers did not have reasonable suspicion to justify the stop of the defendant and were not justified in patting him down. The State applied for writs to this court which were granted, and the denial was reversed with this court stating:
A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. Art. 215.1. If an officer stops a person pursuant to art. 215.1, the officer may conduct a limited pat down frisk for weapons if he [96-1408 La.App. 4 Cir. 3] reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B).
"Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La. App. 4 Cir. 2/25/94), 633 So.2d 819. In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir. 1993), writ denied, 626 So.2d 1177 (La. 1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir. 1994), 641 So.2d 1081. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir. [96-1408 La. App. 4 Cir. 4] 1991), writ denied, 578 So.2d 131 (La.1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La. *690 1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992), State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990). In State v. Thornton, 611 So.2d 732 (La. App. 4 Cir.1992), conduct constituting the charge of illegally carrying a gun in violation of La. R.S. 14:95, was based on the defendant's having concealed it in his pocket. In Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the United States Supreme Court held that an anonymous tip, corroborated by police surveillance, could supply enough reliability to support an investigatory stop. See also State v. Morales, 583 So.2d 129 (La.App. 4 Cir. 1991).
In State v. Ricard, 94-0975 (La.App. 4 Cir. 7/14/94), 640 So.2d 880, in a high crime area the defendant appeared to be intoxicated and ignored the officers' order to stop. The defendant clenched his hand and attempted to put it into his coat pocket. Believing that the defendant was reaching for a gun, the officer grabbed the defendant's hand and opened it, finding a cocaine pipe. This court found that the officers articulated specific reasons for suspecting that the defendant had a weapon, and the evidence was legally seized.
In State v. Ganier, 591 So.2d 1328 (La.App. 4 Cir.1991), police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The defendant saw the officers, turned "suspiciously", began to walk away slowly, and then began to run. The officers chased the [96-1408 La.App. 4 Cir. 5] defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.

State v. Ganier, 591 So.2d at 1330.
In State v. Hall, 581 So.2d 337 (La. App. 3 Cir.1991), in a high crime area at approximately 4:00 a.m. an officer observed three subjects standing on a corner. As he was alone, the officer began to pat down the subjects before conducting interviews "pretty much agreed to" by the three subjects. As the officer started to pat down one person, he noticed that a female subject kept placing her hand in her left pocket and was "sort of evading him" by stepping away. The officer patted down the female, checking for a gun. When he felt a sharp object in her pocket, he retrieved four hypodermic needles, and arrested the female. The appellate court found that the stop and frisk were justified based on the reasonable suspicion that the defendant was reaching for a weapon. Under La.C.Cr.P. art. 215.1, the officer was authorized to stop and frisk the defendant based on the high crime area, the defendant's evasive conduct, and her reaching into her pocket possibly to retrieve an unknown object. The evidence was properly seized.
[96-1408 La.App. 4 Cir. 6] In State v. Parker, 94-0624 (La.App. 4 Cir. 11/8/94) 645 So.2d 1309, writ denied 94-3042 (La. 9/15/95), 660 So.2d 446, a citizen who would not give his name told police, who were on routine patrol in a high drug trafficking area, that a black male wearing a white T-shirt and purple pants with the letters LSU on the side and riding a bicycle was selling drugs. The *691 officers proceeded to the corner and found the defendant meeting the citizen's description. They called him over and he approached them with a clenched fist. They asked him to open his fist and found that he was carrying a plastic bag of rocks which later proved to be crack cocaine. On appeal, this Court affirmed the trial court's refusal to suppress the evidence, noting:
Having legitimately stopped the defendant whom they were just told moments before was selling drugs they saw that his fist is clenched. Common sense dictated that he was holding the merchandise he was selling in the clenched fist. Defendant had no expectation of privacy in his clenched fist under these circumstances. In addition since the clenched fist in all probability held drugs the situation was analogous to the drugs being in the plain view of the officers.
In State v. Massey, 529 So.2d 139 (La.App. 4 Cir.1988), officers were flagged down by an unknown female who reported someone selling drugs at a particular location in the St. Thomas Housing Projects. The officers found the defendant standing in the street and leaning into a stopped car. The defendant then backed away and discarded two tinfoil packets containing cocaine. The detailed description given by the unknown female in Massey was thus corroborated when the officers saw the suspect leaning into a stopped car, consistent with the sale of drugs.
Curtis, 681 at 1289-1290.
After Curtis, the Louisiana Supreme Court found no reasonable suspicion in State v. Robertson, 721 So.2d 1268 (La. 1998). In that case, an officer received an anonymous phone call from a concerned citizen. The caller said that "Will" drove a dark green Pontiac Grand Am with dark tinted windows and was involved in the narcotics trade in the Magnolia Project. The caller gave a description of the defendant and described where the car was parked when not being used to deliver drugs. The officers went to the location and saw the car. While they were setting up surveillance, they observed the vehicle drive away. When the car parked, the driver exited and matched the given description. The officers approached and asked the defendant his name. He responded, "William Robertson." The officers informed him that he was under investigation for narcotics. A canine unit arrived at the scene ten to fifteen minutes later. When the dog found the drugs, the defendant was arrested. This court denied writs. State v. Robertson, 97-1950 (La.App. 4 Cir. 11/5/97, 701 So.2d 272), unpub. Judge Murray dissented, finding that there was no verification of the tipster's reliability, no observation of any suspicious actions, and insufficient corroboration under Alabama v. White. The Supreme Court reversed:
In the instant case, it is true that the officers were able to corroborate certain aspects of the anonymous tip, including defendant's name, his physical description and the location of the described vehicle. The tip, however, contained no predictive information from which the officers could reasonably determine that the informant had "inside information" or a "special familiarity" with defendant's affairs. In particular, the tip failed to predict the specific time period in which defendant would be engaged in illegal activity. It simply stated that drugs would be in the vehicle when not parked at a certain location. Because it is likely that defendant's use of the vehicle included non-illegal activity, the allegation that defendant would be engaged in illegal activity whenever the vehicle was moving was far too general. Since the tip did not provide sufficiently particular information concerning defendant's future actions, an important basis for forming reasonable suspicion was absent. The officers, therefore, lacked reasonable grounds to believe that the informant possessed reliable information *692 about defendant's alleged illegal activities.
We note that the police were not powerless to act on the non-predictive, anonymous tip they received. The officers could have set up more extensive surveillance of defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating the readily observable facts, the officers had noticed unusual or suspicious conduct on defendant's part, they would have had reasonable suspicion to detain him. These circumstances, however, were not present here. In the absence of any suspicious conduct or corroboration of information from which police could conclude that the anonymous informant's allegation of [97-2960 La. 6] criminal activity was reliable, we must conclude that there was no reasonable suspicion to detain defendant. The trial judge erred in holding otherwise.
Robertson, 721 So.2d at 1270-1271.
Recently, the U.S. Supreme Court revisited the issue. Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In J.L., an anonymous caller reported that a young black male wearing a plaid shirt was standing at a particular bus stop carrying a gun. Officers arrived and saw three black males at the bus stop. The defendant was wearing a plaid shirt. The officers did not see a firearm, and the defendant made no threatening or unusual movements. One officer approached the defendant, told him to put his hands on top of the bus stop, frisked him, and seized a gun. The Court specifically held that when an anonymous caller provides no predictive information and therefore leaves the police with no means to test the informant's knowledge or credibility, reasonable suspicion is not established.
Just two months ago, this court reviewed the law on point, post J.L. in a case strikingly similar to this one. In State v. Young, 99-2120 (La.App. 4 Cir. 9/6/00), 770 So.2d 7, Officer Schnapp received a phone call from an informant. Schnapp asked Sergeant Keen and Detective Gaines to assist him in investigating the tip provided by his informant: drugs were being sold in a housing project courtyard in the 3700 block of Thalia Street by a black male riding a bicycle, who was "wearing baggy blue jeans with a camouflage bandana hanging out the side of his pants." Upon arrival at the designated location, Keen stopped the unmarked police car so that the headlights were shining into the courtyard, which was also illuminated by outdoor lights on the buildings. The officers saw the defendant, who was dressed as described by the informant, straddling a bicycle as he talked to two other men. A woman was about thirty feet away, walking towards the defendant and his companions, but no one else was in the courtyard. The woman "backed off" when she recognized those approaching as police officers. None of the men moved or tried to flee as the three policemen approached, but the defendant told them something like, "The guys you're looking for went that way." The officers ignored this and instead immediately patted all three down "for officer safety." As Keen frisked the defendant's pockets he felt a "large billowy object that was consistent with the packaging of narcotics." Upon retrieval, it was found to be a large plastic bag that contained eighty individually wrapped packages of cocaine, so the defendant was arrested. Keen also seized a bandana hanging from defendant's pocket as well as $250.00, consisting of seven ten-dollar bills and nine twenty-dollar bills. Although no contraband was found on defendant's two companions, they were also arrested because the policemen believed "they were acting in conjunction with the defendant, Mr. Young, in the sale of narcotics." At the hearing on the motion to suppress the evidence, Keen testified that he had never used the informant who had provided the tip in this case, and thus could not answer questions about prior reliability or whether the informant was compensated. Keen explained that as *693 commanding officer, "it's my understanding that [Officer Schnapp] has used information from this specific informant," because "I'm around these guys who work for me, the officers who work for me. And I don't really recall any specifics. It's just a feeling that I have right now." Keen emphasized, however, that the defendant was found in the exact location given by the informant, on a bicycle, and was wearing the clothing described in the tip.
The State argued, as it does here, that unlike the vague allegations of intermittent drug dealing noted in State v. Robertson, 97-2960 at p. 5, 721 So.2d at 1270, in Young, the police were told that drug sales were being conducted at the time of the call, thus providing a specific time period that necessitated urgency. Therefore, the State maintained, as it does here, that this court must defer to the trial court's determination that the officers were reasonable in suspecting Young of engaging in illegal activity at the time he was first approached.
This court stated:
In this case, the State failed to present any testimony or evidence pertaining to the past reliability of Officer Schnapp's informant or the basis for the informant's knowledge of Mr. Young's activities. At the hearing on the motion to suppress, Sgt. Keen could only state that he trusted his subordinates in such cases and that it was his understanding that the informant had provided trustworthy information in the past, implying reliability. However, "[a] mere assertion by police that an informant is reliable is insufficient to establish an informant's credibility." State v. Alexander, 92-2179, p. 3 (La.App. 4th Cir.2/11/94), 632 So.2d 853, 855, writ denied, 94-0621 (La.6/24/94), 640 So.2d 1343. Absent any evidence by which to assess the reasonableness of Officer Schnapp's reliance on the source of his information, this court cannot base its determination solely upon his testimony that it was a "confidential informant." Accordingly, we must determine whether, considering the phone call to be an anonymous tip, the officers had knowledge of sufficient facts to reasonably suspect that Mr. Young had engaged or was engaging in criminal activity when they approached him in the courtyard.
It is well established that an anonymous tip, suitably corroborated, can contain "sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop." Alabama v. White, 496 U.S. 325, 327, 110 S.Ct. 2412, 2414, 110 L.Ed.2d 301 (1990). However, the U.S. Supreme Court has now made it clear that the mere corroboration of an unknown caller's report regarding the physical description and location of an alleged perpetrator is insufficient under this standard. In Florida v. J.L., supra, an anonymous caller told the police "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." Upon arrival at that location six minutes later, two officers saw three young men "just hanging out," one of whom, J.L., was wearing a plaid shirt. All three were frisked, and a concealed handgun was found in J.L.'s pocket.
While J.L. contended the search was illegal, the prosecution argued, as the State does here, "that the tip was reliable because its description of the suspect's visible attributes proved accurate: There really was a young black male wearing a plaid shirt at the bus stop." The Supreme Court rejected this argument, however, explaining that such corroboration did not establish the necessary reliability:
An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue *694 requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

Florida v. J.L., 20 S.Ct. at 1379 (emphasis added). The Court further explained that despite the "extraordinary dangers" presented when the tip includes an allegation of an illegal firearm, there could be no lesser standard of "pre-search reliability testing" in such cases. Id.

Although the State emphasizes that the informant in the instant case provided the police with greater detail than was available to the officers in J.L., these details provided no additional support to a determination that the allegation of drug dealing was reliable. Instead, the easily observable information regarding Mr. Young's clothing and his bicycle merely allowed the police to quickly pinpoint which individual was the target of the accusation. Similarly, while the State asserts that the caller's allegation of current, ongoing drug activity in this case constituted an additional predictive element of the tip and necessitated urgent action, this "time factor" is indistinguishable from the tipster's report in J.L. that the defendant would be found to have a handgun in his possession. Therefore, despite the officers' visual corroboration of the informant's tip in the instant case, that information alone, as in J.L., was insufficient to support an investigatory stop.
Nor do we agree with the State's contention that as in State v. Huntley[2], the detention and search of the three men was warranted under Article 215.1 because Mr. Young told the approaching police that they should look elsewhere for their suspects. Unlike the men approached in Huntley, Mr. Young and his friends made no attempt to flee when they saw the police pull up, nor did they make threatening or suspicious gestures. Although Mr. Young was in a housing project courtyard, there was no testimony in this case, as there was in Huntley, that the location was a high-crime area or otherwise known for drug activities.
Furthermore, the testifying officers expressly denied any prior encounters with Mr. Young, and there was no indication that any of the three men were known to have a violent or criminal background until after they were searched and arrested. Absent evidence of further articulable, objective knowledge by the police, the circumstances presented here are insufficient to meet the constitutional standard for an investigatory stop set forth in Florida v. J.L. Therefore, the trial court's finding that the search and seizure was justified by reasonable suspicion was in error, and Mr. Young's motion to suppress the evidence should have been granted.
Young, pp. 5-8, 770 So.2d at 10-11.
This case is virtually indistinguishable from Young. The officers admitted they were provided with little information from the sergeant. There was no testimony at all about the source of the information. The informant therefore must be assumed by this court to have been unknown and untested. The officers went to the scene with the vague knowledge that drugs were being sold at some undetermined time, and that two black men who had a white LTD were involved in the transactions. They immediately stopped Boson and Smith upon seeing them.[3] The defendants were not performing any suspicious activity at the time they were stopped.
Thus, based on the facts presented, this court finds that the officers lacked reasonable suspicion to stop Boson and Smith. As a result, all of the evidence, all of which was obtained after the stop, should have *695 been suppressed. Where a citizen is stopped without reasonable suspicion, the right to be left alone is violated, thereby rendering unlawful any resultant seizure of abandoned property. State v. Chopin, 372 So.2d 1222 (La.1979).
This assignment has merit.

CONCLUSION
Accordingly, the conviction and the trial court's ruling on the motion to suppress are reversed, and the matter is hereby remanded to the trial court for a new trial. As such, it is not necessary to address the other assignments of error raised by appellants.
REVERSED AND REMANDED.
NOTES
[1] Smith testified at the trial of the defendant. The State amended the heroin count to possession, and Smith pled guilty to both counts December 13, 1998.
[2] 97-0965 (La.3/13/98), 708 So.2d 1048.
[3] It is not clear whether the men were already in the car and were ordered out of it, or whether they were simply about to get into the car when they were stopped. Either way, the result is no different.