# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 04-827

STATE OF LOUISIANA

VERSUS

LAMAR PIERCE PHILLIPS

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 03-671
HONORABLE ALLEN A. KRAKE, DISTRICT JUDGE

**********

## BILLY HOWARD EZELL
## JUDGE

**********

Court composed of Billie Colombaro Woodard, Marc T. Amy, and Billy Howard
Ezell, Judges.

**AFFIRMED IN PART; VACATED IN PART AND REMANDED FOR
RESENTECING.**

David E. Stone
Attorney At Law
P. O. Box 165
Alexandria, LA 71309
(318) 445-4601
Counsel for: Defendant/Appellant
Lamar Pierce Phillips

**James D. White, Jr.**
**Assistant District Attorney**
**P. O. Box 1652**
**Monroe, LA 71210**
**Counsel for: Plaintiff/Appellee**
**State of Louisiana**

**James Patrick Lemoine**
**Assistant District Attorney, 35th Judicial District Court**
**P. O. Box 309**
**Colfax, LA 71417**
**(318) 627-2971**
**Counsel for: Plaintiff/Appellee**
**State of Louisiana**

**Lamar Pierce Phillips**
**West Carroll Detention Center**
**P. O. Box 307**
**Epps, LA 71237**

**EZELL, JUDGE**.

The Defendant, Lamar Pierce Phillips, was charged with possession of cocaine in violation of La.R.S. 40:967(F), illegal carrying of a weapon in violation of La.R.S. 14:95(E), and obstruction of justice in violation of La.R.S. 14:130.1. He filed a motion to suppress that was denied following a hearing on March 4, 2004. Thereafter, the Defendant pled guilty, reserving his right pursuant to *State v. Crosby*, 338 So.2d 584 (La.1976), to contest the trial court's denial of his motion to suppress.

On April 20, 2004, the Defendant was sentenced to twelve years at hard labor, the first five years without benefit of probation, parole, or suspension of sentence, for possession of cocaine; five years at hard labor without benefit of probation, parole, or suspension of sentence for illegal carrying of a weapon; and five years at hard labor for obstruction of justice. All sentences were to run concurrently. Immediately following sentencing, the Defendant's motion to reconsider sentence was denied.

On appeal, the Defendant seeks review of the trial court's denial of his motion to suppress and urges his sentence is excessive.

### ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, the court recognizes there is one error patent.

The Defendant did not receive a fine although one is mandated by the penalty provision of La.R.S. 40:967(F)(1)(a). That provision mandates a fine of not less than $50,000.00 nor more than $150,000.00. Thus, the Defendant received an illegally lenient sentence for the possession of twenty-eight grams but less than two hundred grams of cocaine. Both statutory law and jurisprudence allow an appellate court to

1

recognize an illegally lenient sentence on its own. La.Code Crim.P. art. 882 and *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790. This court has recognized the trial court's failure to impose a mandatory fine as an error patent and has, in its previous cases, remanded the cases for resentencing. *State v. August*, 03-1478 (La.App. 3 Cir. 4/7/04), 870 So.2d 553, *State v. Figueroa*, 03-1390 (La.App. 3 Cir. 3/31/04), 869 So.2d 957, and *State v. Cedars*, 02-861 (La.App. 3 Cir. 12/11/02), 832 So.2d 1191. Thus, the Defendant's sentence for possession of twenty-eight to two hundred grams of cocaine is remanded for resentencing since the trial court has discretion as to the amount of the fine to be imposed. *See State v. Gregrich*, 99-178 (La.App. 3 Cir. 10/13/99), 745 So.2d 694.

## ASSIGNMENT OF ERROR NUMBER ONE

The Defendant contends the trial court erred in denying his Motion to Suppress alleging an illegal search and seizure.

At the hearing, Grant Parish Sheriff Deputy Bradley C. Sudduth stated that on the night of April 15, 2003, a victim arrived at the police station and filed a complaint against the Defendant for aggravated battery. Deputy Sudduth testified the victim was severely beaten and told him he had gotten into a fight with the Defendant who had hit him repeatedly with a board. A witness corroborated the victim's complaint. Colfax City Police Detective Bobby Hines obtained an arrest warrant for the Defendant for aggravated second degree battery.

Deputy Sudduth explained what happened later that night around midnight:

A    At that point, we were going out to look for Mr. Phillips, and Detective Hines and myself and Deputies Hollis Tassin and Caleb Martin went out to try to apprehend Mr. Phillips.

Q    Okay. And do you recall where you . . . first of all, do you know where Mr., where Mr. Phillips lives, to your own knowledge, do you know where he lives? Where he . . . I guess where he lists his residence at?

2

A     I know where he lists his residence at.

Q     Okay.  Can you describe for me what you recall that to be?

A     It's on Lake Street in Colfax.

Q     Okay.  And is that, in fact, where you know Mr. Lamar Phillips to stay or to be during the day and during the night when you're on your routine patrols?

A     That's not where I see him.

Q     Where, where do you see him from time to time?

A     Well, I see him, I see him at various places, but the majority of the time it's at HUD Loop . . .

Q     Okay.

A     . . . in Colfax, Loop.

Q     And did Officer Hines have a location to go, and did he tell you a place where he thought Mr. Phillips might be after the search warrant was . . . I mean, the arrest warrant was secured?

A     Yes, sir . . .

          BY MR. STONE: Objection, hearsay.

          BY THE COURT: Continue.  Overruled.

Q     After you . . . what did he tell you . . . or where did he tell you you could go and look . . . to look for Mr., Mr. Phillips?

A     Detective Hines told me that Lamar Phillips was probably at his girlfriend's residence located at 137 HUD Loop, Colfax, Louisiana.

Q     And was that consistent with the location that you have noticed Mr. Phillips to be present prior to this particular date in question . . .

A     Yes, it is.

Q     And have you observed him there or known him to be present there on more than one occasion?

A     Oh, yes, sir.  I've seen Mr. Phillips many times on HUD Loop . . .

Q     Okay.

3

A        . . . is the reason I looked.

Deputy Sudduth testified that when they arrived at the girlfriend's residence he and Detective Hines went to the front door, while two other officers covered the back of the apartment. He explained the Defendant had a habit of running before the police could approach him. Deputy Sudduth testified that he has known the Defendant to carry a weapon, run, and fight if he is caught. He stated that he knocked on the front door and a male voice asked who was there. Deputy Sudduth identified himself and asked the occupant(s) to come to the door. A few seconds later the Defendant's girlfriend, Darnetta Williams, answered the door. Deputy Sudduth asked Williams if the Defendant was there and she said yes. He testified he asked Williams if he could come in and speak with her and she stepped back and said yes. Deputy Sudduth stated he stepped inside the living room and again asked if the Defendant was there. Williams told him he was in the bedroom and pointed to the bedroom door. Deputy Sudduth later testified that he told her he had a felony arrest warrant for the Defendant but left the warrant in the car.

Deputy Sudduth testified that he heard someone moving around in the bedroom. He explained that he was concerned because he thought the Defendant was going to get out of a window, get a weapon, or destroy evidence. Deputy Sudduth stated that he told Williams that he was going in the bedroom. He found the Defendant completely naked sitting on the toilet with the bathroom door open. Deputy Sudduth told the Defendant he was under arrest for aggravated battery, told him to stand up, and told him not to flush the toilet. He explained that based on his experience he felt the Defendant might be trying to destroy some evidence. Deputy Sudduth testified the Defendant did not obey his order and immediately tried to flush the toilet. He stated he grabbed the Defendant by the arm and pulled him off of the

4

toilet. The Defendant was prevented from flushing the toilet. Deputy Sudduth and Detective Hines wrestled the Defendant to the bed where he was handcuffed. Deputy Sudduth testified he looked inside the toilet bowl and saw a plastic wrap laying on the bottom that contained a "cookie" of suspected crack cocaine. After retrieving the bag, Deputy Sudduth arrested the Defendant for possession of cocaine with intent to distribute, and advised him of his *Miranda* rights.

While the Defendant was being dressed, Deputy Sudduth noticed a box of .380 bullets and a small amount of suspected crack cocaine on the bedroom dresser. He testified that Williams denied owning a gun or the crack cocaine. Deputy Sudduth stated that the Defendant admitted that the crack cocaine was his and Williams did not have anything to do with it. Deputy Sudduth testified Williams gave him consent to search for a gun. A .380 automatic was found in the top dresser drawer.

Deputy Sudduth stated that Williams was very cooperative and at no time withdrew her consent for him to be in her apartment. He testified that he did not threaten Williams or promise her anything in order to obtain her consent.

Deputy Sudduth testified that they did not obtain a search warrant for the Defendant because he did not think they "had enough for that." He admitted that he and the other officers could have waited outside Williams' apartment for the Defendant to leave and then arrested him. Deputy Sudduth stated that he did not have any belief that the Defendant had any evidence in his possession related to the battery that could have been destroyed while a search warrant was obtained. He also stated that he had "intelligence" information that drugs would be involved in the arrest. Deputy Sudduth testified that they went to Williams' house because they had a felony warrant and knew that the Defendant had to be "boxed in" to be caught.

Darnetta Williams testified that the Defendant was her boyfriend, but that he

had not stayed at her house on a regular basis. She stated she had only lived at 137 Hud Loop for about one month before the Defendant's arrest. Williams testified that Detective Hines had previously parked in front of her house and watched for the Defendant. Williams testified that on the night in question she let the Defendant in and then went back to bed. Later that evening, someone knocked on her door, and she asked who it was. An officer called out Grant Parish Sheriff's Department, and she opened her door and asked if she could help the officers. When she answered the door, the Defendant was in the bathroom. Williams testified that three to five officers, including her cousin Bobby Hines, were standing at her door. She stated one of the officers had walked from around her house.

Williams testified as follows:

A  So then Bobby said, was Lamar there, I said no, because of the tone of voice that he was talking to me. So then he say . . . Brad said, was he here. I said, no, he's not. Bobby said, yes, he is, because this is where he be. And so after he said that, I was standing in my door. They moved me out of the door and moved in my house. After that, I asked them, I said, well, do you have a search warrant. They said . . . Brad said, by this being a government authority, we do not have to have a search warrant to search your house. And that's when they began to search my house. After that, they moved in my room. When they moved in my room, they found bullets on my dresser. It was some other police officer, and I don't know his name. He said, well, do you have a gun, and I say, no I do not. I said, but why are you searching my house if you don't have a search warrant. This is a government authority, and by us finding bullets in your house, that gives us all the consent to search your house. And that's that.

Q  Did you at anytime . . . do you at anytime remember Detective Sudduth or Detective Hines asking you for consent to search your house?

A  No, they did not.

Q  Do you remember at anytime you giving consent to search your house or, or to come into your house?

A  No, I didn't.

6

Q	And to the best of your recollection, you specifically asked them when they came in if they had a search warrant?

A	Yes, I did.

Q	And you were advised they didn't have one?

A	They didn't have one with them.

Q	And that they didn't need one?

A	Because it was a government authority.

Q	And what does, what does that mean?  I . . .

A	As far as me being on housing.

Williams testified that Detective Hines snatched the Defendant off of the toilet and the Defendant fell against the tub, and then to the floor.  Williams denied hearing any officer tell the Defendant not to flush the toilet.

On cross-examination, Williams admitted she initially lied to Detective Hines about whether the Defendant was at her house.  She explained that she did not want the officers tearing up her place looking around and that her young child was home.

On rebuttal, Pineville Police Officer Caleb Martin testified regarding the number and location of officers at the scene.  He stated that he assisted Detective Hines, Officer Sudduth and another deputy  in the arrest of the Defendant.  He stated that there were only four officers on the scene.  Officer Martin explained that he and Deputy Tassin went behind the Williams residence to cover the back door.  When they heard talking inside the house, the two officers went to the front door and entered the residence.  He stated the door was open and Detective Hines and Officer Sudduth were already inside.  Officer Martin testified that Williams was standing in the living room when the Defendant was being arrested.

During oral arguments, the trial court indicated that Williams' testimony, that Detective Hines had been watching her house, provided the justification for the police

7

expecting to find the Defendant at that location. The trial court stated that the fact that Williams admitted that she had initially lied to the police indicated she had a credibility problem.

In denying the motion to suppress, the trial court stated:

> BY THE COURT: Well . . . is . . . Ms. Williams' testimony would require this court to, to buy the fact that the Grant Parish Sheriff's Office operates a . . . "as cowboys," something much similar that we've heard about from certain segments of the LAPD or certain sensationalized TV shows. I, I simply find that incredible, that the, that the, that the sheriff's office acts that way, has never acted that way, in, in, in my, in my experience.
>
> BY MR. WHITE: Well, Your Honor . . .
>
> BY THE COURT: Is . . . I find the testimony . . . I find Ms. Williams' testimony to be largely incredible. I find . . .
>
> BY MR. WHITE: Thank you.
>
> BY THE COURT: . . . the . . . it's a credibility question on my part, Mr. Stone, and I find the, I find the credibility of Officer Sudduth is corroborated by Officer Martin to, to be the accurate version of the events as they happened on the night of April 15th of 2003. Is . . . I will note that even Ms. Williams even admitted that she began this affair off by being untruthful with the police. Is . . . simply, if they had an arrest warrant . . . is . . . if Ms. Williams did not want them in the house, she should simply have told Mr. Phillips to come to the door . . . is . . . the police are here for you. The police at that time would have had no reason to enter the house at all. Is . . . however, what happened was, is that Mr. Phillips didn't want to be arrested, which is understandable, and so at that, at that point, the police had a, had a reason to be in the house. They had reason to believe that Mr. Phillips was there. They had a valid arrest warrant. Is . . . I find, I find <u>Stigall</u> and <u>Wolf</u> to be distinguishable from the case . . . from the facts of our . . . plus, I also find that the, that the officer obtained valid consent to enter the house as well. That's my ruling, and the motion to suppress is denied. I'll see y'all at trial.

The State bears the burden of showing that a voluntary consent was obtained prior to a warrantless search. In *State v. Bargeman*, 98-617, p.5 (La.App. 3 Cir. 10/28/98), 721 So.2d 964, 967, *writ denied*, 99-33 (La. 5/28/99), 743 So.2d 658, this court stated:

When a trial court rules on a defendant's motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court should not overturn a trial court's ruling, unless the trial court's conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion. *State v. Burkhalter*, 428 So.2d 449 (La.1983), and *State v. Gaspard*, 96-1279 (La.App. 3 Cir. 2/11/98); 709 So.2d 213. The admissibility of evidence seized without a warrant is a question for the trial court. Its conclusions on credibility and the weight of testimony regarding the voluntariness of a consent for admissibility purposes will not be overturned on appeal, unless the conclusions are unsupported by the evidence. *State v. Gachot*, 609 So.2d 269 (La.App. 3 Cir.1992), *writ denied*, 617 So.2d 1180 (La.1993), *cert. denied*, 510 U.S. 980, 114 S.Ct. 478, 126 L.Ed.2d 429 (1993).

The State argues in its brief to this court that the Defendant may lack standing to contest the warrantless search of Williams' residence that resulted in his arrest. However, we find that the resolution of this constitutional claim is unnecessary because a voluntary consent is an exception to the warrant requirement. If Williams consented to the search, then a search warrant for her residence was not required. Consequently, the discovery of the Defendant was proper and his arrest was made pursuant to a valid arrest warrant.

Based on the totality of the circumstances, review of the record before this court supports the trial court's finding that Williams voluntarily allowed the officers to enter her residence and search for the Defendant. Officer Sudduth testified that Williams voluntarily gave consent to search, and that she never withdrew her consent to search. Williams denied giving consent and testified that she demanded a search warrant from the officers who told her they did not need one. The issue of consent in this case turns on the credibility of those testifying and the weight of the evidence. The trial court stated that it did not believe the testimony of Williams. It is not the role of this court to second-guess the determinations of the trial court. Therefore, this court cannot say the trial court abused its discretion in denying the motion to suppress, and this

assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

The Defendant contends his sentences are excessive. For possession of cocaine, in violation of La.R.S. 40:967(F), he received twelve years at hard labor, with the first five years without benefit of probation, parole, or suspension of sentence. For illegal carrying of a weapon, in violation of La.R.S. 14:95(E), he received five years at hard labor, without benefit of probation, parole, or suspension of sentence; and for obstruction of justice, in violation of La.R.S. 14:130.1, he received five years at hard labor.

In his brief to this court, the Defendant merely argues that his sentences created undue hardship and pain. The State maintains the sentences are not excessive, considering the Defendant's extensive criminal history.

The trial court made the following comments at the sentencing hearing:

> BY THE COURT: Mr. Phillips, would you please stand? Mr. Pierce Lamar Phillips, the court has reviewed the presentence investigation. Is . . . you have a long and colorful history in this parish with crimes against the person, as well as, as well as drug offenses and a strong juvenile record. Is . . . you were subsequently . . . after your initial arrest for these charges, you were arrested again . . . is . . . at least one time for another, for another drug distribution charge. Is . . . the . . . and simply, I believe 53.7 grams of crystal . . . of . . . was it crystal meth, I believe . . .

> BY MR. WHITE: Crack cocaine, Your Honor . . .

> BY THE COURT: Cocaine . . . crack cocaine. I'm sorry. Were in your possession. Is . . . you attempted to, to dispose of that and obstruct justice. Is . . . you were in possession of a firearm in close proximity to the, to the drugs involved. And given that and the serious nature of the offense . . . is . . . anything less than a significant period of imprisonment would be . . . would deprecate the seriousness of the offenses you are charged with.

The Defendant could have received a sentence of up to thirty years at hard labor and a $150,000.00 fine for possession of cocaine. Instead, he received twelve years,

a sentence near the minimum sentence of five- years for this crime. The Defendant did not receive a fine although one is mandated by the penalty provision of La.R.S. 40:967(F)(1)(a). That provision mandates a fine of not less than $50,000.00 nor more than $150,000.00. Thus, the Defendant received an illegally lenient sentence as discussed in the error patent section above. On the weapons charge, the Defendant received only the minimum five-year sentence and did not receive any fine. For obstruction, the Defendant could have received up to twenty years at hard labor and a fine of up to $100,000.00. Again, the Defendant received a near-minimum sentence of five years with no fine.

> The standard of review for Louisiana appellate courts in determining whether a sentence levied upon a particular defendant was excessive is the manifest-abuse-of-discretion standard. *State v. Guzman*, 99-1753 (La.5/16/00), 769 So.2d 1158. A trial judge has considerable latitude in imposing sentences within the constraints provided by law. *State v. Thompson*, 02-0333 (La.4/9/03), 842 So.2d 330. However, in *State v. Marshall*, 94-0461, p. 24 (La.9/5/95), 660 So.2d 819, 829, the Louisiana Supreme Court held that "[a] sentence may violate a defendant's constitutional right against excessive punishment even if it is within the statutory limit," *citing State v. Sepulvado*, 367 So.2d 762 (La.1979). Furthermore, under both United States and Louisiana law, a sentence is unconstitutionally excessive if it "(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977); *State v. Handy*, 96-2505, p. 1 (La.1/6/97), 686 So.2d 36, 37, *citing State v. Dorthey*, 623 So.2d 1276 (La.1993). The Louisiana Supreme Court has provided a list of several factors that appellate courts are to consider in ascertaining whether a sentence, by its excessive duration or severity, is grossly disproportionate to the underlying offense. *State v. Baxley*, 94-2982 (La.5/22/95), 656 So.2d 973, *citing State v. Telsee*, 425 So.2d 1251, 1253 (La.1983). The appellate court's analysis of the sentence is cumulative and centers on an amalgam of relevant factors. *Id*. Among these factors the supreme court notes, are "the nature of the offense and the offender, a comparison of the punishment with sentences imposed for similar crimes, the legislative purpose behind the punishment, and a comparison of the punishment provided for this crime in other jurisdictions." *Baxley*, 656 So.2d at 980, *citing Telsee*, 425 So.2d at 1253-54.

*State v. Wilturner*, 03-719, pp. 5-6 (La.App. 3 Cir. 11/5/03), 858 So.2d 743, 746

(alteration in original).

Given the near-minimum sentences and the illegally lenient sentence the Defendant received, the court cannot say the trial court abused its discretion when imposing the Defendant's sentences nor can it say that the sentences make no measurable contribution to acceptable penal goals. Accordingly, the court finds the Defendant's sentences are not excessive and this assignment of error lacks merit.

## CONCLUSION

The court recognizes the illegally lenient sentence imposed for possession of twenty-eight to two hundred grams of cocaine; the sentence imposed for that offense in regard to the fine imposed is vacated, and the case remanded for resentencing. All other sentences are affirmed.

**AFFIRMED IN PART; VACATED IN PART AND REMANDED FOR RESENTENCING**.