# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-1641

STATE OF LOUISIANA

VERSUS

DAVID WAYNE LEDAY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 98032
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Marc T. Amy, Judges.

**DENIAL OF MOTION TO SUPPRESS AFFIRMED. SENTENCE VACATED. REMANDED WITH INSTRUCTIONS.**

Cooks, J., dissents and assigns written reasons.

Michael Harson
District Attorney
Cynthia K. Simon
Assistant District Attorney
Post Office Box 3306
Lafayette, LA 70502-3306
(337) 232-5170
COUNSEL FOR APPELLEE:
    State of Louisiana

Richard Allen Spears
Post Office Box 11858
New Iberia, LA 70562-1858
(337) 367-1960
COUNSEL FOR DEFENDANT/APPELLANT:
    David Wayne Leday

AMY, Judge.

Pursuant to a plea agreement, the defendant entered a guilty plea to a charge of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. The trial court subsequently sentenced the defendant to twelve and one-half years at hard labor, without benefit of parole, probation, or suspension of sentence. The trial court ordered the sentence to run concurrently with any other sentences that the defendant was serving. The defendant appeals his conviction, asserting that the trial court erred in denying his motion to suppress. For the following reasons, we affirm the denial of the motion to suppress. We vacate the defendant's sentence and remand with instructions.

**Factual and Procedural Background**

Officer Kane Marceaux of the Lafayette Police Department testified that he was assigned to the Metro-Narcotics unit on January 30, 2003 when he received an anonymous telephone tip that led to the investigation and arrest at issue. According to Officer Marceaux, the caller identified an address and stated that "there was a black Dodge truck parked on the lot. There was a black male there, maybe selling narcotics, something along those lines." Officer Marceaux testified that the caller may have identified the individual as David Leday, the defendant.

Officer Marceaux further testified that he was familiar with the address given as one associated with crack cocaine sales. He estimated that he had "probably arrested over 100 people at that location alone[,]" and that the department had made "well over 500 or 600 narcotics arrests [] at that location." Officer Marceaux also knew the owner of the address given and that the owner had executed a no trespass letter.[1] After arriving at the location, Officer Marceaux observed the vehicle

---

[1] With regard to the "no trespass letter," Officer Marceaux explained that: "A homeowner or a business owner can sign a letter. And, basically, if anyone's found on the property, you can

described by the caller. He also observed the defendant standing outside of the vehicle, and asked him about the ownership of the vehicle. The defendant indicated that he was the owner.

Officer Marceaux testified that he asked the defendant for his identification and then conducted a warrants check. Officer Marceaux was advised that defendant was wanted in Baton Rouge for a parole violation. The defendant was placed under arrest on the warrant. According to Officer Marceaux, he advised the defendant of his *Miranda* rights and handcuffed him. The defendant was not placed in the police unit, but remained outside of his vehicle. The defendant refused Officer Marceaux's request to search the vehicle. At that time, Officer Marceaux called for a canine unit. The dog was used to conduct an open air sniff around the vehicle, but, according to Officer Marceaux, the dog did not alert to the presence of narcotics. While the State asserts in brief that the police report indicates that the dog alerted to the passenger side door, the record contains no such proof.

Officer Marceaux then proceeded to search the vehicle and found two 12-gauge shotgun shells. When questioned about the shells, the defendant indicated that they belonged to an uncle or cousins, and had fallen on the ground outside his residence. He stated that he put them in his vehicle to keep them from being damaged. Upon further questioning, the defendant stated that he had several hunting weapons and a .357 magnum revolver belonging to the uncle and cousins located at his house. Officer Marceaux testified that the defendant stated that the weapons were not his, and that the officers could remove them from the house.

---

arrest them. It's posted." The letter is kept on file at the police department.

Officer Marceaux sent Agent Trampus Gaspard and another agent to the house located at the address provided by the defendant. The home was occupied at that time by Katina Arvie, the defendant's one-time girlfriend.[2] Officer Marceaux explained that he joined the other officers at the home. According to Officer Marceaux, Ms. Arvie stated that she had no knowledge of the weapons, signed a consent form to search the house, and advised the officers that they could remove the weapons. The State questioned Officer Marceaux as to the weapons removed from the home, asking whether the following had been removed: "A .22 caliber rifle, a .12 gauge Mossberg shotgun, another .22 caliber rifle, a .410 shotgun, a .12 gauge Remington shotgun, another .12 gauge Mossberg, and a 357 Magnum." He responded: "That sounds about right." Ammunition was also discovered.

The bill of information indicates that, on March 26, 2003, the defendant was charged with six counts of possession of a firearm by a convicted felon, violations of La.R.S. 14:95.1. The defendant filed motions seeking to suppress evidence, questioning the reasonableness of the officers' initial questioning of the defendant and whether consent was provided for the search of the residence. The trial court denied the motions to suppress after an April 11, 2005 hearing.

Pursuant to a plea agreement, the defendant entered a plea of guilty to count one of the indictment. Counts two through six were dismissed. The defendant also reserved his right to appeal the ruling on the motion to suppress. The trial court sentenced the defendant to twelve and one-half years at hard labor, without benefit of parole, probation or suspension of sentence. The defendant was given credit for

---

[2] Ms. Arvie testified that the defendant was no longer living at the house and would only visit occasionally. She explained that they had "got into a bad argument, and we had kind of just split up." As stated above, however, the defendant identified the address as his residence to the officers.

time served on the present charge or on any other charge since January 30, 2003. Furthermore, the trial court ordered that the sentence be served concurrently with any other sentence being served.

The defendant filed an application for a writ of review with this court. The court granted the writ, holding that an appeal was the appropriate vehicle to seek review following a guilty plea and the reservation of the right to appeal in accordance with *State v. Crosby*, 338 So.2d 584 (La.1976). *State v. Leday*, an unpublished writ bearing docket number 05-769 (La.App. 3 Cir. 7/11/05). The court further held that it considered Relator's timely filed notice of intent as a timely filed motion for appeal. The court remanded the case to the trial court for proceedings consistent with a timely filed motion for appeal.

The defendant now appeals, arguing in his sole assignment of error that: "The trial court failed to suppress both the initial detention of David Leday and the search of his vehicle."

## Discussion

*Errors Patent*

Having reviewed this appeal for errors patent on the face of the record as is required by La.Code Crim.P. art. 920, we find one error requiring correction.

Louisiana Revised Statutes 14:95.1(B)[3], the penalty provision for possession of a firearm by a convicted felon, indicates that the sentence requires the imposition

_____

[3] La.R.S. 14:95.1(B) provides: "Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars."

of a mandatory fine of not less than $1,000.00 nor more than $5,000.00. However, the trial court failed to impose a fine. Pursuant to La.Code Crim.P. art. 882, this court has the authority to correct an illegally lenient sentence. This correction may be made despite the failure of either party to raise the issue. *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790. Accordingly, we vacate the defendant's sentence and remand the matter for resentencing. *See State v. Phillips*, 04-827 (La.App. 3 Cir. 11/10/04), 887 So.2d 670 (wherein a panel of this court found that the trial court's failure to include a mandatory fine in the defendant's sentence required that the sentence be vacated and the matter remanded for resentencing).

We further note that the illegal sentence was part of the defendant's plea agreement. On the defendant's "Plea of Guilty" form, the following is written under the "Plea Agreement" section:

> 12½ years HL w/o benefit of parole, probation or suspension of sentence with credit for time served on this or any other charge since 1-30-03. The sentence shall run concurrently with any other sentence. . . .

During the guilty plea colloquy, the trial court informed the defendant of the potential penalty for possession of a firearm by a convicted felon, including the fine, and the defendant stated that he understood the penalty. The trial court then proceeded, however, with questioning the defendant about the guilty plea form, which the defendant stated he voluntarily signed. The trial court later stated that the sentence that it was going to impose was "an agreed sentence." Finally, the trial court sentenced the defendant as follows:

> In return for your plea, the State is recommending and I am sentencing you to 12 - ½ years of hard labor, without benefit of parole, probation, or suspension of sentence.

You will receive credit for any time you have served on this or any other charge since January 30th of 2003. And this sentence will run concurrent with any other sentence that you are serving.

You are also to forfeit any item seized at the time of arrest.

In considering the defendant's plea, which included the illegal sentence, we are mindful of the supreme court's admonishment that "appellate court[s] should refrain from employing errors patent review to set aside guilty pleas about which the defendant makes no complaint and which resulted in dispositions of the cases favorable to the defendant." *State v. Campbell*, 01-329, p. 1 (La. 11/2/01), 799 So.2d 1136. (Citation omitted). *But see State v. Jefferson*, 02-1038 (La. 1/10/03), 838 So.2d 724 (wherein the supreme court vacated a guilty plea when the defendant agreed to an illegally lenient sentence)[4].

In keeping with *Campbell*, 799 So.2d 1136, we do not vacate the defendant's guilty plea, but reserve to him the right to maintain his guilty plea in light of the mandatory fine or to withdraw his guilty plea prior to resentencing on remand. *See State v. Chisley*, 03-426 (La.App. 5 Cir. 10/15/03), 860 So.2d 45, *writ denied*, 03-3358 (La. 4/2/04), 869 So.2d 874.

*Motion to Suppress*

The defendant assigns as error the trial court's denial of his motion to suppress. He argues that the officers had no right to approach him, and had no right to search his vehicle.

---

[4] In *Jefferson*, however, the question of the defendant's illegally lenient sentence and underlying plea was presented to the court by the parties. *See State v. Jefferson*, 01-1139 (La.App. 5 Cir. 3/13/02), 815 So.2d 120. The errors were not discovered on error patent review alone.

Reasonable Suspicion to Approach

The defendant first argues that the police officers did not have the reasonable suspicion necessary to approach the vehicle. He cites *State v. Robertson*, 97-2960 (La. 10/20/98), 721 So.2d 1268 and *State v. Boson*, 99-1984 (La.App. 4 Cir. 1/17/01), 778 So.2d 687, *writ denied*, 01-0430 (La. 9/13/02), 824 So.2d 1192, arguing that they indicate that an anonymous tip is insufficient to create reasonable suspicion "to conduct the stop of an automobile."

In *State v. Sims*, 02-2208, pp. 4-5 (La. 6/27/03), 851 So.2d 1039, 1043, the Louisiana Supreme Court explained as follows with regard to an investigatory stop:

> While an arrest requires officers to have probable cause to believe that a suspect has committed a crime, *see* U.S. Const. amend. IV and La. Const. art. I, § 5, an investigatory stop requires a lesser standard of "reasonable suspicion." *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In Louisiana, the investigatory "*Terry*" stop is codified in La.Code Crim. Proc. art. 215.1(A): "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." Like an arrest, an investigatory stop entails a complete restriction of movement, although for a shorter period of time. *State v. Bailey*, 410 So.2d 1123, 1125 (La.1982).
>
> In making a brief investigatory stop, the police "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Kalie*, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Specifically, our courts have interpreted article 215.1 to require that an officer point to specific and articulable facts to justify an investigatory stop. *State v. Huntley*, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049.

At the hearing on the motion to suppress, the trial court identified the officers' approach and questioning of the defendant as an investigatory or "*Terry*" stop and denied the motion to suppress. In reviewing a ruling on a motion to suppress, an appellate court considers the totality of the evidence presented at the suppression

hearing. *State v. Thomas*, 02-471 (La.App. 3 Cir. 10/30/02), 829 So.2d 1137, *writ denied*, 02-2920 (La. 4/21/03), 841 So.2d 789. Furthermore, unless the trial court's ruling is not supported by the evidence or it is clearly an abuse of discretion, it is not to be overturned by the appellate court. *Id.*

After review of the record, we find no abuse of discretion in the trial court's ruling with regard to the initial stop. Officer Marceaux testified that he received an anonymous tip regarding the presence of a man standing outside of a truck. Officer Marceaux explained that the caller felt that the man was possibly selling narcotics. Furthermore, Officer Marceaux was familiar with the address, having made numerous drug-related arrests at or near the location. He also knew that the owner of the location permitted trespass enforcement. Consistent with the anonymous call, Officer Marceaux found the defendant located next to the black truck upon his arrival at the scene. Finally, we note that the officers' approach was minimally intrusive. According to Officer Marceaux, he approached the defendant and asked for his identification and inquired whether he owned the truck. Based on the defendant's response, a warrants check was conducted. There is no indication that the defendant was subjected to a frisk prior to the return of the information regarding the outstanding warrant.

Further, we note that the cases advanced by the defendant are distinguishable from the present case. In *Robertson*, 721 So.2d 1268, officers received an anonymous tip that an individual named Will, who drove a Pontiac Grand Am, green in color with dark tinted windows, was selling narcotics at a certain location. The officers arrived at the location and observed the described vehicle pull away and drive to another location. When the driver of the vehicle exited, the officers approached and asked

8

his name. The driver identified himself as William Robertson, and was advised by the officers that he was under investigation for narcotics. At that point, a canine unit was called and the dog alerted to the odor of narcotics coming from the vehicle. The officers then searched the vehicle and found illegal narcotics.

In *Boson*, 778 So.2d 687, two officers were advised by their superior to go to a location to check on complaints of illegal narcotics activity, and to look for a white Ford LTD and two males who were supposed to be selling illegal narcotics. When the officers arrived at the specified location, they observed two males enter a vehicle fitting the description they had been given. The officers approached the vehicle and ordered the occupants out, and patted them down for weapons. One officer felt a bulge and ordered the individual being patted to remove everything from his pocket. The individual was observed trying to discard a bag containing crack cocaine.

In both *Robertson* and *Boson*, the court found insufficient justification for an investigatory stop that led to an arrest. In the instant case, however, the defendant was not initially arrested for illegal activity related to the search of the vehicle or the later search of the house. Rather, the defendant was asked only if he knew who owned the vehicle and to identify himself. It was the return of the outstanding warrant, based upon minimally intrusive questioning, that led to the defendant's arrest. Without question, the outstanding warrant supplied the basis for the defendant's subsequent arrest.

Based upon the record's support of the trial court's ruling, we find no abuse of discretion in denying the defendant's motion to suppress with regard to the initial stop of the defendant.

9

Search of the Vehicle

The defendant also argues that the officers had no right to conduct a warrantless search of the vehicle. But for the search, he contends, there would have been no search of the house where the evidence was discovered.

In *State v. Carter*, 95-703 (La.App. 3 Cir. 9/12/95), 663 So.2d 152, a panel of this court referenced United States Supreme Court jurisprudence and reiterated that a warrantless search is per se unreasonable except in a few established exceptions. The type of search purportedly at issue in this case, *i.e.*, the search incident to arrest is one of those exceptions. *Id.*, citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034 (1969). The court explained as follows with regard to the search incident to arrest:

> The search incident to arrest is limited to the area within the arrestee's immediate control. *State v. Bradford*, 298 So.2d 781 (La.1974). Pursuant to *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and *State v. Drott*, 412 So.2d 984 (La.1982), a search incident to arrest extends to the arrestee's automobile. It is permissible to search the interior of an automobile after arresting its occupants when they remain in proximity to the vehicle. *State v. Drott*, 412 So.2d 984 (La.1982); *State v. Nicholas*, 397 So.2d 1308 (La.1981); *State v. Bradford*, 298 So.2d 781 (La.1974); *State v. King*, 322 So.2d 205 (La.1975); *State v. Wilkens*, 364 So.2d 934 (La.1978).

*Carter*, 663 So.2d at 154. *See also New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860 (1981) (wherein the United States Supreme Court held that, following a lawful custodial arrest of the occupant of an automobile, a police officer may search both the passenger compartment and any containers found therein.)

Here, the officers approached the defendant while he was standing outside of the vehicle, which he identified as his own. The officers subsequently arrested the defendant. Therefore, the search incident to arrest exception permitted the officers

to search the area that was within the defendant's immediate control. As noted above, this area extends to the passenger compartment of the defendant's vehicle.

Furthermore, it is of no moment that the defendant was adjacent to his vehicle rather than inside of his vehicle at point of contact with the police officers. In *Thornton v. U.S.*, 541 U.S. 615, 124 S.Ct. 2127, 2131 (2004), the United States Supreme Court considered a case in which the police officer made contact with the defendant only after he left his vehicle and explained that: "In all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle." The Court further explained that:

> A custodial arrest is fluid and "[t]he danger to the police officer flows from *the fact of arrest*, and its attendant proximity, stress, and uncertainty," [*United States v. Robinson*, 414 U.S. 218, n. 5, 94 S.Ct. 467, n. 5 (1973)] (emphasis added). See *Washington v. Chrisman*, 455 U.S. 1, 7, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982) ("Every arrest must be presumed to present a risk of danger to the arresting officer"). The stress is no less merely because the arrestee exited his car before the officer initiated contact, nor is an arrestee less likely to attempt to lunge for a weapon or to destroy evidence if he is outside of, but still in control of, the vehicle. In either case, the officer faces a highly volatile situation. It would make little sense to apply two different rules to what is, at bottom, the same situation.

*Id.*

Neither does the fact that the defendant was handcuffed at the time of the search render the search illegal. Rather, we note that the defendant was not only handcuffed at the time of the search at issue in *Thornton*, but had been secured in the back of the patrol car.

For these reasons, we conclude that the record supports the trial court's denial of the motion to suppress insofar as it relates to the search of the vehicle. Furthermore, we note that the record supports the trial court's observation that Ms.

11

Arvie consented to the subsequent search of the house where the guns were located. Ms. Arvie acknowledged her signature on the consent form at the hearing. The form was entered into evidence. While Ms. Arvie suggested that the investigating officers threatened her in order to obtain her consent, the trial court was free to reject this testimony. In fact, the trial court referenced credibility in denying the motion to suppress.

The defendant's assignment lacks merit.

## DECREE

For the foregoing reasons, the denial of the motion to suppress is affirmed. The defendant's sentence is vacated and the case is remanded for resentencing. The defendant's right to withdraw his guilty plea is reserved.

**DENIAL OF MOTION TO SUPPRESS AFFIRMED. SENTENCE VACATED. REMANDED WITH INSTRUCTIONS.**

# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 05-1641

STATE OF LOUISIANA

VERSUS

DAVID WAYNE LEDAY

**COOKS, J., dissents.**

I respectfully disagree with that portion of the majority opinion vacating the sentence of the defendant based on an errors patent review of the record. In this case, both the guilty plea form and the sentence imposed by the trial court made no mention of the fine imposed by La.R.S. 14:95.1(B). The Louisiana Supreme Court has directed appellate courts to "refrain from employing errors patent review to set aside guilty pleas about which the defendant makes no complaint and which resulted in dispositions of the cases favorable to the defendant." *State v. Campbell*, 01-0329 (La. 11/2/01), 799 So.2d 1136, 1137. Although the majority opinion cites *Campbell*, , it vacates the defendant's guilty plea, based on an errors patent review, and remands for resentencing. The defendant is then faced with a Hobson's choice of either maintaining his plea in light of the mandatory fine (which fine upon resentencing will be imposed by the court) or withdrawing his guilty plea and proceeding to trial. This result, the majority professes, is "[i]n keeping with *Campbell*." By vacating the guilty plea, and remanding for resentencing, the majority opinion circumvents the mandate of the *Campbell* decision. I respectfully disagree with this portion of the majority opinion.